ASHLEY v. QUINTARD et al.

(Circuit Court, N. D. Ohio, W. D. October 3, 1898.)

No. 1,424.

1. REMOVAL OF CAUSES—APPEARANCE—WAIVER OF OBJECTION TO SERVICE.
    A nonresident defendant, served only by publication in a proceeding in rem by attachment, by a removal of the cause to the federal court does not waive the right to move to vacate the service on the ground that the court did not obtain jurisdiction over the property sought to be reached.

**2.** Garnishment of Foreign Corporation — Actions against Nonresident Stockholder.

Shares of stock in a corporation of one state, owned by a resident of another, cannot be reached by garnishment in a third state in which the corporation does business, by service of garnishment on the agent of the corporation in the state and of summons on the defendant stockholder by publication, in the absence of special statutory provision therefor; and a statute subjecting foreign corporations to suits and garnishment in the state as a condition precedent to their doing business therein, in connection with one authorizing attachments in suits against nonresidents, does not confer such authority. Such statutes, as affecting corporate garnishees, apply only to debts due from the corporation generally, or to property held by it within the state; and a corporation is not a debtor of its stockholders in such sense that it may be garnished as such, nor does it hold their stock except at the place where it has its domicile, and subject to the laws of such place.

**3.** Same—Statutes Affecting Foreign Corporations.

State statutes subjecting foreign corporations to the service of process and to suits and garnishment within the state as a condition of their right to do business therein cannot be held to also require by implication that their shareholders shall submit their shares of stock to the dominion of the state.

**4.** Same—Ohio Statutes.

Though the Ohio statutes authorize the attachment of stocks and interests in stocks, and permit the garnishment of a foreign corporation doing business in the state in actions against nonresident defendants, and also require a corporation garnishee to make disclosure of any stock held therein for the benefit of the defendant, such statutes presuppose that the debts or property to be subjected, and to which the disclosures relate, are within the dominion of the state, and do not bring within such dominion shares of stock in a foreign corporation, whether the corporation as garnishee makes disclosure of their ownership by defendant or refuses to make such disclosure.

**5.** Same—Situs of Corporate Stock.

The situs of corporate stock for any purpose must be either the domicile of the corporation or that of the owner. Whether for the purpose of seizure and subjection to legal process it can be elsewhere than the domicile of the corporation, quære.

## On Motion to Vacate Service.

Appearing only to make this motion, certain of the defendants ask to vacate a service by publication of an attachment writ, and to discharge the attachment. The suit was brought in the state court, and removed here by one of the defendants. That defendant, the Ann Arbor Railroad Company, has answered, but there has been no service of the summons upon Quintard and others of the defendants, and only by the attachment and publication involved in this motion have they been brought in, if at all. There seem to have been two writs, one from the state court before removal, and the other from this court after removal, but the question here made concerning each is the same. The attachment was served in Lucas county, Ohio, upon the defendant the Ann Arbor Railroad Company, by garnishment, to which that defendant has answered, saying that it is a corporation of the state of Michigan, operating a line of railroad partly in Michigan and partly in Ohio, only a small part of its property being located in the state of Ohio. This garnishee's answer also states the defendants Quintard and others, making this motion, are citizens and residents of New York; that each owns the amount of the common or preferred stock of the Ann Arbor Railroad Company set opposite his name in the garnishee's answer; and that the garnishee has no other property whatever of the said defendants in its possession or control. This is all that appears by the garnishee's answer. It is stated in the motion that the company has "its principal office in Durand," in the state of Michigan, but this is not sworn to by any one. However, by

the seeming agreement of counsel in argument it is generally understood that the company has an office in New York City, where the stock books are kept, and transfers are made, and other financial operations conducted; that it has its terminal offices at Toledo, Ohio, where most of its administrative or operative offices are kept, but its corporate headquarters are at the village of Durand, in Michigan. The details of these matters are not shown, as no affidavits have been submitted in support of or against the motion.

C. W. Everett, John J. Kumler, and Charles S. Ashley, for plaintiff.
Smith & Beckwith and Clarence Brown, for defendants.

HAMMOND, J. (after stating the facts). Technically, perhaps, this motion should be decided solely upon the answer of the garnishee, which is not at all full in its statement of the facts, though it sufficiently appears by that document that the defendants are citizens of New York and nonresidents in Ohio, while the railroad company is only a Michigan corporation. But even that is not stated in the answer of the garnishee, but rather stands upon the agreement of counsel in argument that it is not incorporated in Ohio as it might be in both states. We find the fact to be that it is solely a Michigan corporation. It seems to be conceded by counsel for the motion that the shares of stock would be leviable either in Michigan, the corporate domicile of the company, or in New York, the residence of the owners of the shares. Apart from any authoritative adjudication on the subject, it is not very clear, considering the nature of shares of corporate stock, if it be leviable in New York, why it may not likewise be leviable in Ohio, or any other state, if service could be had upon the garnishee company. Merely because the debtors in execution or attachment reside in New York, and because that state may be taken as the situs of the shares for some of the purposes of ownership, such as the peculiar nature of the property permits,—as, for example, bequest by will or distribution after death intestate, or for taxation, and the like,—it does not follow that the shares may be subjected to the process of execution or attachment in that state, any more than other tangible or intangible personal property the debtors might own which happened, in fact, to be within the boundaries of the state of Michigan; wherefore the ultimate logic of the doctrine contended for by counsel for the motion must be that shares of stock are leviable only in the state where the company has its corporate domicile, or else in any state where there can be service on the company. Public policy would seem to favor the former rule, particularly as to quasi public corporations, and those which, like railroads, are practically perpetuated in their existence in one way or another. It would be a convenience and source of safety to have one place only to which all might resort to effectuate by sale under judicial process any enforced change of title or ownership of the shares. If that should require the plaintiff here to go first to New York for his judgment, and then to Michigan for another judgment, it would only be a result common to legal procedure; and the same result that would be found necessary if the same debtors owned other property located in Michigan. Perhaps one suit in Michigan, the corporate domicile, furnished by a law of that state authorizing nonresidents to be sued as to any property located there, might suffice. The case of Jellenik v. Mining Co., 82

Fed. 778, is not against this doctrine, but rather in favor of it. There our Brother Severens held that plaintiffs, claiming that the shareholders held their shares fraudulently as against them, could not, in Michigan, try that question with shareholders nonresident there, under the laws of Michigan in that behalf. They first must go to the state of residence, settle the title there, and then to Michigan to compel a transfer, if the personal jurisdiction over the shareholders at their residence would not secure complete relief by compelling the transfer there. The truth is that the peculiar characteristic of shares of stock, united with the misfortune of having one's debtor owning property in foreign parts, combine to present difficulties in litigation concerning the shares which cannot be overcome, except in some such manner as that suggested by Judge Severens. Possibly they may be insuperable difficulties without special legislation to remedy them, but that is the reason for the existence of legislatures,—to provide remedies as the necessities for them arise. It does not follow from his decision that executions and attachments against nonresident shareholders cannot be had in Michigan. If so, however, it only shows that further legislation may be needed there to give relief as against nonresident shareholders in Michigan corporations.

Even if it should result that shares in a corporation in another state than that in which the debtor resides cannot be subjected to execution or attachment for his debts, because there can be no personal service of summons on and judgment against him in that state upon which to base an execution, and that no attachment could be made effectual, that should not influence the courts in deciding such questions as this, for the reason that they can neither legislate nor impress a different quality upon property than it possesses inherently from the sources of its creation or origin. One must deal with the corporation itself in some form to subject shares of stock to judicial process against their owners, and it may be difficult to find the corporation for that purpose elsewhere than in the corporate domicile, particularly since the latest decisions of the supreme court seem to establish that it can have only one domicile or habitation for the purposes of suits against it, so far as federal jurisdiction is concerned, at least. Railroad Co. v. James, 161 U. S. 545, 563, 16 Sup. Ct. 621; Railroad Co. v. Steele, 167 U. S. 659, 17 Sup. Ct. 925; U. S. v. Northwestern Exp. Stage & Transp. Co., 164 U. S. 686, 689, 17 Sup. Ct. 206; Steamship Co. v. Kane, 170 U. S. 100, 106, 111, 18 Sup. Ct. 526; Railway Co. v. Gonzales, 151 U. S. 496, 14 Sup. Ct. 401; Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935; In re Keasbey, 160 U. S. 221, 229, 16 Sup. Ct. 273. Under the existing judiciary act, the plaintiff, being an inhabitant of Ohio, might have brought this suit in this court originally, but he would have required personal service to reach the defendants. Having sued them in the state court, he might attach any property of theirs found in Ohio, and the question is whether his attachment has found their shares of stock in a Michigan corporation in Ohio. If it has not, they may move here to discharge the service made in the state court. Railway v. Brow, 164 U. S. 271, 17 Sup. Ct. 126.

How did the shares of stock become located in Ohio, and subjected to the quite absolute dominion of the laws of that state over any prop-

erty situated within its boundaries? Certainly, if the corporation is not an Ohio corporation, the shares are not here in that sense. If the owners are not citizens of Ohio, they are not here in the sense that the situs of the shares is that of the domicile of the owners. They can be here, then, only because the corporation is doing business in Ohio, and operates a railroad within its limits. Can that fact operate to bring all the shares of all its stockholders within the dominion of Ohio, any more than it brings any other or all of their personal belongings here? We have seen that it does not operate to make the corporation itself an "inhabitant" of Ohio, so as to subject it to suit in the federal courts of Ohio as such "inhabitants." The plaintiff may sue it, if he can find service here, only because he himself is an inhabitant of Ohio, not because the company is an inhabitant here. Why, then, should its doing business here by permission of the state of Ohio bring here the shares of its stock, which do not belong to it, but to other people, when it does not itself become domiciled here? If it be true—as it is—that the laws of Ohio require as a condition of doing business in the state that the company shall submit to be sued here by process upon its officers doing its business within the state, it does not follow that those laws require the shareholders to submit their shares of stock to the dominion of Ohio, and thereby subject them to execution and attachment within that state. The laws do not say this in express terms. If the state has the power to attach such a condition to the license of doing business in the state, it should expressly define the condition, and it is not necessarily to be implied from any statutes authorizing process against the company itself nor from any authorizing the property of nonresidents to be attached. The subjection of the shares of the stockholders to execution or attachment, or of the shareholders themselves to any kind of suit within the state, not connected with some liability of the company, is a subject-matter entirely foreign to the subject-matter of process against foreign corporations. It does relate, indeed, to the attachment laws, but it would be hard to hold that attachment statutes, without express words to that effect, should be construed to impose, as a condition of foreign corporations doing business in the state, a requirement that all its shareholders should be personally suable by the attachment of their shares if nonresidents, when that ownership is altogether foreign to the business of the company,—just as foreign as such a suit would be in its relation to shares of stock in any other company whatever that the nonresidents might happen to own, or as it would be to any other kind of property they might happen to possess. Without such a requirement, express or implied, it is impossible to find a location within Ohio of the shares of stock of a Michigan corporation belonging to nonresidents of Ohio.

The company is liable to process by garnishment, undoubtedly; but when it answers that the defendant in attachment is one of its shareholders it might as well have said that it had in its hands the property of the defendant debtor, but that it was held by the company within the state of Michigan, and not within the state of Ohio,—locomotives, let us say, used wholly within the state of Michigan, or within the state of New York, where the debtors reside,—if it be a proper ruling

that the situs of the shares, as to their individual ownership, follows the domicile of the owner. In that case the answer of the garnishee amounts to saying that the property in its hands is held by it for the owner in the state where the owner resides. There it may be reached by equitable, or, possibly, legal, attachment or execution; the owner, if in no other way, being enjoined in equity, after judgment at law, from disposing of the shares, and these being sold under direction of the court to satisfy the judgment; or, if need be, and right there were before judgment, be attached by like equitable proceeding, after the common custom of courts of equity in granting relief where there is no remedy at law. It would greatly depreciate the value of the property, and deter investments in these quasi public enterprises, if the shares of stock are to be dragged into every state which the corporation enters to do business, and be at one and the same time in all those states, for the purposes of attachment or execution against their owners. Shares of stock represent aliquot parts of the corporate property in a certain sense, but this is as to the whole property, and not segregated parts that may happen to be in a particular place or under the particular dominion of a given state; and these shares cannot be ascertained and distributed on a winding up until all the property, wherever situate, has been gathered together for such a distribution in solido, and not as to each separate part. Therefore, theoretically as well as practically, the location of never so much of the corporate property in a state where it is not incorporated or organized, but is only doing business by permission, does not, as to that property so located, establish the shares or aliquot parts thereof in the state of that location. It is quite incapable of such treatment under any view of corporate existence or control.

It is not worth the while to become involved in any intricacies of consideration as to the situs of a debt. It is only in a very qualified and somewhat metaphysical sense that a corporation is a debtor to its shareholders for their shares. The shareholders are the owners of the corporation, not its creditors, in relation to this matter of seizing the shares as property. The corporate property is not subject to seizure as their property for many reasons; and to reach the individual interests of the shareholders for the purposes of taxation, descent and distribution, and attachment and execution, and other purposes to be imagined, peculiar methods are to be adopted, and the situs of the shares may shift according to these needs, respectively. For the purpose of compulsory action to reduce the shares of any individual owner to money by judicial seizure and sale, almost necessarily you must act both upon the shareholder and the company, either jointly or in consecutive relation, and it is not enough to answer this necessity, which is founded in our rules of jurisprudence for giving notice before execution, to seize only the company by process of garnishment. It would embarrass its business to require the company constantly to look after the individual ownership of its shareholders in its shares, and they really have no duty in respect of this, except, perhaps, at its corporate domicile, where its shares are dealt with by it and the law. Every consideration, it seems to me, of public policy and private justice to the parties concerned, requires

that the situs of shares of stock for seizure by attachment or execution at law shall be that of the corporate domicile, or, if there can be any other, then that of the domicile of the shareholder. If they cannot be attached or taken in execution at either of these places, there is no reason why they should be elsewhere; and, if special legislation be required to reach them when the shareholder resides in one state and the corporation in another, it may be provided, and doubtless has been in many states. If special provision to that end is to be made for the plaintiff in Ohio because he is a citizen of Ohio entitled to its aid against nonresidents having property in the state, or any interest in property in the state, that likewise may be accomplished by appropriate legislation designed for the purpose,—such as affixing as a condition for doing business in the state a requirement that shareholders, as to their ownership in the shares, shall submit to suit in Ohio. But that has not been done, in my judgment, by any necessary implication from existing legislation,—either that subjecting the company itself to suit here by its voluntary or compulsory agreement to be served with process here, as a condition precedent, or by that prescribing a remedy by attachment against nonresidents, nor by both these together. There is no indication in the attachment laws of any distinction bétween a home creditor and a nonresident creditor as to their benefit, and therefore there is nothing in the fact that the plaintiff is an Ohio creditor which aids the implication under consideration. Nor does the fact that there may be a necessary implication from that agreement of effectual garnishment as to other property, like tangible personalty, or debts owing by the corporation to the nonresidents, aid that which we are asked to make as to the shares of stock.

Garnishment, at law, as to shares of stock, is not the same thing as garnishment of a debt owing by the company, or of property held by it in hand; and equitable attachment by garnishment, or analogous procedure, to that end, would, in the ordinary nature of equitable proceedings, require personal service on all the parties in interest, or such substituted service that it would not be appropriate where the principal defendant and the equitable garnishee were both out of the jurisdiction. Elsewhere than in the home state of the owner or the corporation, except in this qualified way that the garnishee corporation may be served with process, there could be no substituted process satisfactory to a court of equity, or a court of law proceeding with equitable remedies. Notice is essential in a court of equity to some one whom the court can control. That service is qualified by the fact that the shares of stock are not in the garnishee's hands or under its control elsewhere than in the state of its creation, because by the laws of that state alone the shares also are created; and, owing to that peculiar creation, they are regulated and governed nowhere else as to all their incidents, including that of alienation, by judicial process, as by other methods. The service is not qualified by any restrictive effect to reach only suits concerning its own business, for the company may be garnished generally, as to all people, in Ohio; but Ohio cannot, or at least has not undertaken by the attachment laws, to administer the laws of Michigan in relation to shares of stock in Michigan corporations. And the alienation of the shares as against the

shareholders, property of their own, as it is, and not of the corporation, by compulsory processes of any kind, is yet so intimately connected with the corporation administration that the alienation should be solely under the control of the laws of Michigan upon grounds of public policy, if nothing more. Whatever may be said of other forms of its corporate obligations, those to its shareholders must have their sole location in its own domicile (possibly as well in the domicile of the shareholder for some purposes), and they cannot, in the nature of the thing, follow the corporation into any place where it is liable to suit or process. To illustrate what is meant here, let us suppose that the laws of Michigan provided that shares of corporation stock should be exempt from attachment and execution, and could be subject to judicial alienation only by a bill in equity at the particular place where the company had its headquarters in Michigan. Could the shares be judicially alienated elsewhere on any theory that they had no situs, and followed either the shareholder or the company wherever either should go? Or, if the Michigan law required 30 days' advertisement before a judicial sale could operate to transfer the stock, and the Ohio law only 10 days, would the Ohio law override the Michigan law? Mr. Justice Story, in Black v. Zacharie, 3 How. 483, 511, holds that from the nature of stock of a corporation the validity of its assignment is necessarily, like every other attribute of a corporation, to be governed by the local law of that state, and not by the local law of any foreign state. In that suit the attachment of the stock was in the domicile of the corporation. It was also held, as to shares of stock, to be a principle of international jurisprudence that "personal property has no locality, and that the law of the owner's domicile is to govern the validity of the transfer or alienation, unless there is some positive or customary law of the country where it is found to the contrary." Page 514. This would imply that shares of stock are "found" in the place where the company is domiciled. And again I suggest that an attachment or garnishment in Ohio would not reach property held by the garnishee corporation in Michigan, albeit there may be service of process on the corporation in Ohio. There is no confusion here between the necessary manucaption by the sheriff of tangible things and the impossible manucaption of intangible choses in action, but only the suggestion that inherently shares of stock, unlike other choses in action, perhaps, require something more than mere notice to the obligor to effectuate their seizure. In Gottfried v. Miller, 104 U. S. 521, 528, it was held that an attachment of shares gave the attaching plaintiff no title to the company's property, and "did not in the least incumber it," or prevent its assignment by the company. Therefore the garnishment does not reach the company's property in Ohio, and the location of the property there does not affect the question.

It must be conceded that notice to the company's agent in Ohio that the defendant's shares had been attached would qua notice be as effectual if the Ohio agent did his duty as if lodged at the home office in Michigan. It would get there by a more roundabout route, that is all. And we know it has been as effectual here, for the garnishee defendant appears and sets up the defense for its shareholders just as

they set it up for themselves. But that is not the foundation of the public policy, or of the rule against the effectiveness of the garnishment. The objection of public policy is that, if shareholders are required to submit to foreign attachment on their individual liabilities in every state, far and near, to which the company goes to do business, they will be deterred; and the ground of judgment is that Ohio has not expressly imposed that burden by its statutes, and shares of stock in a foreign corporation are not, necessarily, to be imported into the statute by implication. Moreover, the nature of corporate shares is such that special legislation directing the procedure is required, so that there may be no inconvenient or disastrous conflict between the laws of Ohio and those of Michigan in the process of subjecting them to judicial sale and transfer to a purchaser. But if the Ohio laws governing judicial alienation were a copy of those of Michigan, it would not meet the difficulty. They would not be Michigan laws, which alone control. The absence of such special legislation is, however, against the idea that foreign shares were supposed to be included in the attachment or garnishment laws, or that the shareholders have had such a condition precedent imposed on them. The ordinary attachment laws did not reach choses in action, because incapable of manucaption by the sheriff, and they were supplemented by garnishment statutes designed to subject them; but, if there be a necessity or sound reason for it, the garnishment statute must likewise be held to fall short as to choses they cannot properly reach, and shares in a foreign corporation are of that nature, inherently. The line of reasoning in Reimers v. Manufacturing Co., 17 C. C. A. 228, 70 Fed. 573, is, a fortiori, in support of the reasoning of this opinion, although the plaintiff here is a citizen of Ohio,—an immaterial circumstance, as I have already endeavored to show. That was the case of a debt owing by the corporation, and, as suggested here, stands on a different footing from foreign shares of stock which are not a debt, but something higher in grade and different in property incidents. So, the line of reasoning in Mooney v. Manufacturing Co., 18 C. C. A. 421, 72 Fed. 32, somewhat in conflict with the last-cited case, is not against that here, because that, too, was the garnishment of a debt, and not foreign shares of stock.

The elaborate and very able opinion of Vice Chancellor Pitney in Insurance Co. v. Chambers (N. J. Ch.) 32 Atl. 663, is in full accord with the opinion here expressed as to the essential difference between the garnishment of a debt owing by a foreign corporation and its shares of stock. While disapproving very vigorously the ruling of the New York courts that debts owing by a corporation cannot be attached by garnishment served upon the agents of the company in a state where it has no corporate existence, and is only doing business, he approves with equal emphasis the holdings of those courts that the shares of stock cannot be so attached. Plimpton v. Bigelow, 93 N. Y. 592, 29 Hun, 362; Straus v. Glycerine Co., 46 Hun, 216; Id., 108 N. Y. 654, 15 N. E. 444; Douglass v. Insurance Co., 138 N. Y. 209, 33 N. E. 938. And he remarks, in commenting on this point, that "stock in a corporation cannot be levied upon by an ordinary execution against the holder, except by special statutory provisions; and it would be most unjust

to hold a corporation liable as garnishee upon its stock when it cannot relieve itself from liability by delivering the stock over to the sheriff or other officer serving the writ." Shinn on Attachment (section 209, at page 406, and section 498, at page 868) cites, besides the above cases, a large number from other states to the effect that shares of stock are not leviable except by special statutory provision. Id. § 30, at page 49; Id. § 100, at page 156,—as to effect of the residence or nonresidence of the attaching plaintiff. Id. § 105, that the garnishee company is a foreign corporation notwithstanding its presence, doing business, in Ohio. Id. §§ 208, 209, at pages 402, 406, as to statutory methods of seizing shares of stock. Id. § 476, at page 485, that it is a fundamental requirement of attachment process that the indebtedness must exist or the property be within the state,—citing many cases,—so that on this principle it cannot be said that the garnishee company is indebted or holds the defendant's shares within the state of Ohio. Id. § 477, at page 485, that a mere custodian of a chose in action who is not indebted to the holder is not liable to garnishment. Id. §§ 489–498, as to character of persons who may be served as garnishee,—only those through whose control the thing may be subjected by judgment to the plaintiff's debt within the state (section 489). As to the situs of property subject to garnishment, section 490 is very instructive, it being shown that, according to many authorities, if the garnishee be a nonresident, and the thing he holds (or owes) is not within the state where the process is served (or the debt be not payable there), but is deliverable to the owner elsewhere, the service is not effectual to reach it; and the trustee of choses is not considered to carry them around wherever he may go or be found (at page 860). Id. § 491, is, to same effect,—that where the principal debtor and the garnishee both reside out of the state, and the debt is payable not generally, but by its particular terms, elsewhere, the garnishment is ineffectual, because the thing to be done is not within the power of the court to be compelled. Can these shares of stock be said to be distributable in Ohio, and are they not particularly payable only in Michigan? Id. §§ 492–498, as to corporations as garnishees, domestic and foreign, showing that, while the general rule is that a foreign corporation which is amenable to process in another state may be subjected to garnishment there for anything it holds within the state, or for any debt it owes generally to the principal debtor, and not specially in another place, it cannot, without special legislation to that end, be reached by garnishment for the stock of a member.

It also must be conceded that after notice and publication in another state a judicial sale of the shares by the sheriff or other officer would be, in fashion and substance, just like a sale of the same kind in the home state of the corporation as against a nonresident member, for that is one way the purpose of appropriation may be accomplished, and, perhaps, a sufficiently effectual way of doing it; the purchaser at judicial sale being thus armed with the title to compel a transfer of the stock in the books. But, again, that does not meet the objection of want of dominion over the thing appropriated; not any more than if the state of Ohio should do the same thing as to tangible property or even land of the nonresident debtor situated in another state,

thereby, through substituted service, seeking to appropriate that which is in another state to the payment of debts due its own citizens or others resorting preferably to its courts. Indeed, in my view, shares of stock more nearly resemble land than movables in the quality of being fixed within the boundaries of the state which created them, and regulates all their qualities and incidents, as property. It is a question of resemblances and analogies, and is capable of no other treatment. The often-announced doctrine that the situs of shares follows the owner, like the situs of movables, wherever in fact they may be located, can only be said sub modo at most. Even as to land, by control of the person of the owner titles may be transferred away from their situs by judicial compulsion to execute the deed according to the law of the place where the land lies; but this hardly could be done by any plan of substituted service of process on the owner and notice to the tenant of the land. Whatever may be said in favor of the situs of shares following the owner for other purposes, for the purpose of judicial transfer the analogies swing back towards that of land, rather than movables. If the home state of the corporation may subject them as movables or as choses in action are subjected, and does this, it is sufficient to say that that state also has the same power to so subject lands, if it choose; and it does not follow that the underlying principle of the law of garnishment permits another state to do likewise with other corporate shares than those of its own creation. At all events, the statutes of Ohio have not in express terms undertaken to subject by garnishment foreign shares, as the property of nonresidents, when the corporations happen to have agents within the state doing corporate business there, and amenable to process. One section regulates service of a summons on corporations, and another applies this to foreign corporations having "a managing agent in the state." Rev. St. §§ 5044, 5046. In any civil action the plaintiff may have attachment against the property of the defendant,—of course, within the state is here implied,—when the defendant is a nonresident. Id. § 5521. This attachment commands the sheriff to attach the lands, tenements, goods, chattels, stocks, or interest in stocks, rights, credits, money, and effects of the defendant "in his county." Id. § 5524. The sheriff is directed how to execute the writ as to real property and movables, including an appraisement, and on bond may leave the thing seized with the garnishee. Id. §§ 5528, 5529. If the officer cannot get possession of the property, he leaves a notice with the garnishee to appear in court and answer. Id. § 5530. If the garnishee be a corporation, service may be had on the principal officer or managing agent, clearly including a foreign corporation. Id. § 5534; Railroad Co. v. Peoples, 31 Ohio St. 537. But none of these statutes direct that return of its shares shall be made by a foreign corporation so served except by whatever implication may be made upon the terms of this section authorizing service on the managing agent, and a section following, which declares that the garnishee shall make disclosure, "and in case of a corporation, of any stock held therein for the benefit of the defendant," taken also in connection with the leading section, supra, that stocks or interest in stocks may be attached. The statutes seem to make no distinction between domestic and for-

eign corporations, and there is none so far as relates to property held by either within the dominion of the state. But the distinction inheres as to property not held by the corporation within the dominion of the state in the nature of that fact itself, and appears when the answer is made and discloses that fact, if it does; or it would appear on proceedings against the corporation if it withheld the disclosure of the shares, and were proceeded against for an insufficient answer. Then the question would arise whether the shares were in fact within the state; but surely the fact that it does disclose them does not make them any more within the state than if the disclosure were not made, and the fact concealed, particularly if, as here, the liability were denied. These statutes must be read in the light of the fact that the legislation pertains to things in Ohio, and not things in other states, and, as to foreign corporations, that they may hold things not within this state, as may other garnishees (Shinn, Attachm. § 490), notwithstanding the broad language that corporations must disclose the shares held by the principal debtor. The statutes, in any event, do not undertake to enact that foreign shares held by a nonresident may be laid hold of in Ohio, except by construction and implication upon very broad language, making, in terms, no discrimination as to shares of stock and that kind of property the company might actually hold within Ohio; because, probably, the legislature knew that the language could not be extended to include things over which it had no power, or if it had any, required especial legislation for its exercise, so as not to intrench upon the inherent qualities affixed to shares of stock in the state of their creation. International comity would forbid this, if the power existed. Thus, while the legislature requires garnishee corporations to return their shares for judicial sale, that does not necessarily mean that the shares of foreign corporations may be judicially sold in Ohio, or that, if the owner does not reside here, they may be sold in spite of that fact. The language of all legislation is supposed to be restricted by considerations of international and interstate comity. The authorities indicate that the method of subjecting foreign shares to attachment would be by imposing that liability as a condition precedent to doing business in the state; and that not only the corporation, but the shareholders individually, should also submit to suit here. The absence of such a condition, expressly made or by implication arising from the scope of the statutory scheme, as it does in the case of the corporation itself, is a controlling circumstance to restrict the broad language of these attachment and garnishment statutes. Other provisions of the statute disposing of the property are significant as to its construction on this point. The property seized may be sold for preservation, put in the hands of a receiver, left with the garnishee on bond, etc.; but always he may discharge himself by paying the debt or delivering the property over to the officer. And how could a Michigan corporation deliver shareholder's stock to an officer in Ohio? It might transfer on the books to a Michigan sheriff, perhaps; but could it do this, properly, to a foreign sheriff, at the order of a foreign statute or a foreign court? Or, rather, would Michigan, by comity or constitutional obligation, be compelled to recognize and give effect to these foreign laws and or-

ders made in other states? If not, the property is scarcely to be held to be within Ohio for that purpose. Rev. St. Ohio, §§ 5539–5553. Again, after judgment for the plaintiff the property is to be sold, and by another section paid-up shares are declared to be personal property, and may be sold on execution. Rev. St. Ohio, § 5555 et seq.; Id. § 3255. Suppose the laws of Michigan should declare that shares held in a railroad company should be deemed real estate,—as they might,—or that they should not be liable to execution at all; how could the laws of Ohio operate to change all that by the mere form of garnishment and sale of the shares? The difficulties are inextricable, and, while the cases have not been examined in other directions for analogies or results, and confining our consideration to these particular statutes and to these facts, I do not doubt that this garnishment has not in the least incumbered the shares with any lien, or so put them in custodia legis that it can be made the basis of any publication, process, or judgment here against the nonresident defendants.

The case of Miller v. U. S., 11 Wall. 268, 294, abundantly illustrates the difficulties of seizing stocks by mesne or final process elsewhere than in the home state of the corporation by showing the difficulty of doing it there, as pointed out by the opinions and dissenting opinions, which are very instructive on this subject of seizing shares of stock by judicial process. That, too, was a case of Michigan stocks, and it appears they are not to be attached in that state by mesne process, unless the law has been changed since that time. It was done in that case by garnishment notice at the home office perforce of an act of congress acting within the state of Michigan. What was said by the Sixth circuit court of appeals, through Mr. Circuit Judge Taft, in speaking of a statute of Michigan which said that "any corporation, domestic or foreign, may be garnished under this act" (How. Ann. St. Mich. § 8086), well applies here:

"At all events, there is nothing in the garnishee statute of Michigan expressly requiring a foreign corporation to submit to a judgment in garnishment in such a case. And the mere provision that such corporation shall be generally subject to garnishment is not to be interpreted as imposing a liability, power to impose which is rendered doubtful by the considerations already stated." Reimers v. Manufacturing Co., 17 C. C. A. 230, 70 Fed., at page 575.

We are told by counsel that the precise question has not been decided by the Ohio courts. Counsel disagree as to whether debts due by nonresident garnishees can be attached in Ohio by service when the garnishee is found in Ohio; but it may be conceded that they may when the garnishee has a business residence here, and yet it does not appear that shares of stock also may be seized, since they stand on a different footing from debts. The case of National Bank of New London v. Lake Shore & M. S. Ry. Co., 21 Ohio St. 221, was the seizure of shares in an Ohio corporation, and establishes that, where the nonresident debtor owns such shares, they may be subjected by garnishment under the above statutes. So, in Norton v. Norton, 43 Ohio St. 509, 3 N. E. 348, as to the shares of an absconding debtor in an Ohio corporation; but this is only an affirmance of the doctrine of Miller v. U. S., 11 Wall. 268, that garnishment notice is an appropriate way

to seize shares of stock in the home office of the corporation, and they go no further than that. It is said in Norton v. Norton, supra, that "at common law stock in corporations was not subject to levy or attachment. The shares of stock were neither a chattel or a chose in action." And that the Ohio statutes seize the shareholder's equitable interest in the corporation. 43 Ohio St. 521, 522, 3 N. E. 351. Can the Ohio statutes have the effect to thus change the common law in Michigan? In Railroad Co. v. May, 25 Ohio St. 347, sanction is given to the validity of garnishment in West Virginia of a debt due by the railroad company to a citizen of Ohio at the suit of his creditor, also a citizen of Ohio. The railroad company was a corporation of West Virginia, presumably, though the fact does not distinctly appear. In Railroad Co. v. Peoples, 31 Ohio St. 537, it is said that for all purposes of proceedings under the attachment and garnishment laws a foreign corporation operating a railroad in Ohio under the statutes in that behalf is to be held a domestic corporation; but this was said upon a showing that the garnishee foreign company had here in Ohio, in its possession, cars and like tangible property belonging to the principal debtor, also a foreign company. The case did not concern shares of stock at all. In Root v. Davis, 51 Ohio St. 29, 36, 36 N. E. 669, there are expressions of the opinion which favor the doctrine about which there is so much conflict, that "the credits of a nonresident debtor, without personal service upon him, cannot be attached in this state by simply serving the process of garnishment upon his debtor residing within the jurisdiction of the court issuing the process. That would be, as claimed, to give the laws of the state an extraterritorial effect." And some doubt of the soundness of the case of Railroad Co. v. May, supra, is expressed. But this was said only arguendo, does not appear in the official syllabus, and was held not to apply as between citizens of the state in relation to their residence in different counties.

The case of Winslow v. Fletcher, 53 Conn. 390, 4 Atl. 250, cited by plaintiff, is in favor of the ruling here made, though in that case neither of the parties was a resident of Connecticut, except the garnishee. But I have endeavored to show that the mere residence of the plaintiff does not increase the power of the state in the premises. It is the presence in the state of the defendant, or the thing he owns, which is the essential element of control, and not the presence of the plaintiff, where the state makes no discrimination, and allows all plaintiffs, whether resident or nonresident, equal access to its courts, as most states do, even for the purposes of appropriation by attachment of the property of a debtor found within the state. In that case a Massachusetts creditor sought to reach shares of stock in an Indiana bank belonging to his Indiana debtor, in the hands of a Connecticut garnishee, holding them as a pledge. It was held that he must go to Indiana, "where, in contemplation of law, the stock is situated. By coming here they can only succeed upon the theory that in some sense the stock is located in this state. Such a theory is inconsistent with a familiar and well-settled rule that stock in a corporation, for the purposes of an attachment, has its situs where the corporation is located." It is further said that the sale of stock in another state

by execution or process is not open to creditors in this state. The case is stronger, of course, for a plaintiff, where the company whose shareholders are attached is doing business, and has considerable of the corporate property, in the state issuing the process, and is liable generally to suit there. But the principle is the same in either case, for it is not the company which is sued, but another, who has never asked any permission to do business in the state on conditions agreed upon as precedent to the privilege, and who is, therefore, not pro hac, and for that purpose, a resident of the state, by agreement. He stands outside of all this, and, to my mind, is in no sense in a different category than the Indiana shareholder in the Connecticut case.

In Miller v. Hooe, 2 Cranch, C. C. 622, Fed. Cas. No. 9,573, a District of Columbia garnishee answered that he held property of the defendant debtor under his control at his mill in Virginia, just across the line; and the court held that it was not liable to the process.

In the case of Pinney v. Nevills, 86 Fed. 97, it was decided by the circuit court of Massachusetts, upon the authorities cited, that shares of stock in a foreign corporation are not subject to attachment under the statutes of Massachusetts. Mr. Circuit Judge Colt says: "The general rule of law is that shares of stock in a foreign corporation, owned by nonresidents, are not the subject of attachment."

I must confess that there is difficulty in dealing with the logical bearing of the fact that a large part of the corporate property is in Ohio, and that, if this corporation is amenable to suit in Ohio by general process, which is notice to it for all purposes of process, and may be garnished as to things in its hands and under its control as domestic corporations may be, notice about its shares delivered in Ohio is quite as effectual qua notice as if delivered in Michigan, for the excitation of its own action in the premises; that, after such notice, it may do practically, as to those shares, either by way of notice to its shareholder or by way of its dealing with them, anything it might do if the same notice were lodged across the line, and that there is a good deal of barren technicality about the situs of such property, and its shifting from one place to another, as may be convenient for the uses that may happen to be wanted for a situs for it. Yet I am convinced that the soundest principles of public policy, private justice, and international or interstate comity and obligation require that shares of stock shall be subjected, in invitum, as against an owner not served with process personally, only in the state which created the stock, and regulates its incidents by its own laws, and has the sole right to declare how and under what circumstances it shall be liable to judicial process operating alone upon the stock, and not upon the owner. If I am wrong about this ruling, and it puts unauthorized restrictions upon the statutes of Ohio, it is satisfactory to know that a mandamus will compel this court to take the jurisdiction. Motion granted.