STANDARD FUEL & MATERIAL COMPANY, PETITIONER, v. COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47015.   Promulgated September 26, 1933.

*Allan Muddiman, C.P.A.*, for the petitioner.
*Thomas F. Callahan, Esq.*, for the respondent.

OPINION.

LANSDON: The dispute submitted to us in this appeal relates to
income taxes for the fiscal year ended June 30, 1928, in the amount of
$4,639.66, and arises out of the respondent's having held that the peti-
tioner derived a taxable gain from the sale of 3,000 shares of the
stock of a subsidiary corporation, which it organized and supplied
with capital in that period.

The petitioner is a corporation, organized under the laws of Dela-
ware, with headquarters at Birmingham, Alabama.   On September
27, 1927, it organized the Standard Building & Material Co., here-
inafter sometimes referred to as the new company, with an author-
ized capital stock of 6,000 shares with no par value.   For organiza-
tion purposes, 3,000 shares, or one half of the new company's stock,
were issued to dummy stockholders who surrendered the same for
cancellation on September 27, when incorporation was complete.

The record fails to show the order in which these several acts of
organization were performed, but on September 27 the petitioner
paid in to the treasury of the new corporation $3,000 in cash, and
transferred to it, by book invoices, a group of assets valued at $71,-
566.48.   Thereafter, on the same day, two stock certificates, numbered
4 and 5, respectively, for 3,000 shares each of the new corporation's
capital stock were issued to petitioner.

On September 30 the new corporation received its charter from the
secretary of state.   On the same date petitioner sold to the Birming-
ham Slag Co. 3,000 shares of its capital stock of the new company
for the cash price of $61,562.28, conveyance of which it made by as-
signing over to the Birmingham Slag Co. stock certificate no. 4
theretofore issued to petitioner.

The petitioner claims that the cost to it of the stock transferred
by certificate no. 4 was the value of the assets it transferred to the
new company, which the parties agree was $71,566.48, and that it
sustained a loss in the sale.   This claim is predicated upon the theory
that it purchased two separate blocks of the new company's stock,

as evidenced by certificates nos. 4 and 5, for $71,566.48 in property and $3,000 in cash, respectively.

The respondent contends that the petitioner's purchase of the entire issue of the new company's stock must be regarded as a single transaction, and that the payment in property and cash combined must be treated as the cost to petitioner.

The record shows that the petitioner organized the Standard Building & Material Co. and became owner *ab initio* of 3,000 shares of its capital stock upon their issue to dummy stockholders on September 27, 1927. The original subscription terms are not shown, but petitioner's vice president testified at the hearing that the petitioner and not the dummy stockholders " was the real owner or purchaser of those shares." There being no other stockholder, the petitioner was owner of the new corporation at the moment of its birth, and this control enabled it to sell itself at its own price the unissued stock. *Arkansas Valley Agricultural Society* v. *Eicholtz*, 46 Kan. 164; 25 Pac. 13; *Shellenberger* v. *Patterson*, 168 Pa. St. 30; 31 Atl. 943; *Ashley* v. *Quintard*, 90 Fed. 84.

On the date of the organization of the new company the petitioner transferred to it property valued at $71,566.48, and also paid in to its treasurer $3,000 in cash. Thereafter, or at least on the same day, stock certificates 4 and 5, each for 3,000 shares of the new company's stock, were issued to the petitioner.

The exact order of these transactions is not shown, and, under the circumstances, we do not consider it important, inasmuch as all occurred on the same day and for all practical purposes were coincidental. We, therefore, hold that the petitioner's acquisition of all of the stock of the Standard Building & Material Co. must be regarded as a single transaction, and that the cost to petitioner of each share may be ascertained only by dividing the sum total in property and cash paid by the number of shares in the entire issue.

Even if it could be held that the petitioner separately purchased two groups of stock covered in certificates 4 and 5 at different prices, its contention here could not prevail. The law recognizes no identifiable species of property in a share of corporation stock which can be separated and sold from the mass. Petitioner's having endorsed over to the purchaser an original stock certificate, under the circum-stances, is of no significance. That certificate was merely the corporation's official recognition that its holder was the beneficial owner of an interest in its property and entitled ratably to participate in its earnings and share in a distribution of its assets, upon liquidation.

Had the petitioner issued to itself only the first 3,000 shares of the new company's stock for the assets transferred, its contentions would undoubtedly be sound in respect to their cost; however, the subse-

quent purchase of the balance of the company's stock for a price less than 5 percent of that attributed to the first resulted in a dilution of the cost of the entire issue to a lowered base, which we hold the respondent correctly determined. *Frederick Ayer*, 6 B.T.A. 152; affd., 25 Fed. (2d) 534.

*Decision will be entered for the respondent.*