JOHN B. STEWART, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK H. WHIPPLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57531, 57532. Promulgated January 17, 1934.

*John H. Pigg, Esq.*, for the respondent.

810

STERNHAGEN: The Commissioner determined income tax deficiencies for 1928 of $5,064.54 as to Stewart and $5,221.29 as to Whipple, and the issue turns upon the proper treatment under the Revenue Act of 1928 of the receipt by them, in reduction of the par value of their shares of the Windsor Tobacco Growers Corporation, of fixed assets and cash worth in the aggregate $183,706.14. The facts are stipulated as follows:

1. The petitioner, John B. Stewart, resides at Windsor, Connecticut, and the petitioner, Frank H. Whipple, resides at Hartford, Connecticut.

2. The Windsor Tobacco Growers Corporation is a Connecticut corporation, having been organized under the laws of that State prior to March 1, 1913. As at the beginning of the calendar year 1928, the corporation had an authorized and issued capital stock of $80,000, consisting of 800 shares of the par value of $100. On December 31, 1926, the stock of the corporation was owned and held as follows:

| | |
|---|---|
| John B. Stewart (Petitioner, Dkt. No. 57531) | 200 shares |
| Frank H. Whipple (Petitioner, Dkt. No. 57532) | 200 shares |
| Estate of I. J. Steane | 200 shares |
| Estate of Alfred A. Olds | 200 shares |

John B. Stewart acquired the stock shown opposite his name, for cash, as follows: 100 shares prior to March 1, 1913, and 100 shares subsequent to that date. Frank H. Whipple acquired the 200 shares shown opposite his name prior to March 1, 1913, for cash.

3. On March 1, 1913, the Windsor Tobacco Growers Corporation had a surplus of $65,294.10. On December 31, 1925, its surplus was $125,629.95, of which amount the sum of $60,335.85 represented surplus or earnings accumulated subsequent to February 28, 1913. The net earnings of the corporation for the years 1926 and 1927 were $23,945.84 and $14,072.61, respectively. Its net earnings for the period January 1, 1928, to February 29, 1928, amounted to $5,334.24. During the years 1926 and 1927, the corporation paid dividends to its stockholders in the respective amounts of $16,000 and $4,000.

4. On December 31, 1926, the Windsor Tobacco Growers Corporation acquired from two of its stockholders; namely, the Estate of I. J. Steane and the Estate of Alfred A. Olds, the 400 shares of its stock then owned and held by them, paying therefor cash and securities of the aggregate value of $127,473.40. The stock so acquired was held by the corporation as treasury stock until some time during the year 1927, when the same was issued to the petitioners, 200 shares each, as a stock dividend. At all times material herein, subsequent to the issuance of said shares as a stock dividend, the petitioners were the owners of the entire capital stock of the corporation, each owning 400 shares.

5. During the month of February, 1928, the Windsor Tobacco Growers Corporation filed the necessary papers with the proper state authorities for the purpose of reducing the par value of its capital stock from $100 to $65 per share. In pursuance thereof, and for the purpose of reflecting such reduction on its books of account, the corporation, on February 29, 1928, distributed to its then stockholders, the petitioners herein, all of its fixed assets, consisting of a tobacco plantation and operating equipment, and cash in the amount of

$3,706.14. The fair market value of the fixed assets, on the date of distribution, was $180,000.

6. In his determination of the deficiencies involved in these proceedings, the Commissioner determined that as a result of the distribution made by the Windsor Tobacco Growers Corporation on February 29, 1928, each of the petitioners received taxable dividends in the amount of $30,754.62. The computation employed by the Commissioner in arriving at such determination is as follows:

Earnings accumulated subsequent to February 28, 1913, available
    for distribution on December 31, 1925_____ $60, 335. 85
Less: Premium paid on 400 shares of capital stock acquired by cor-
    poration on December 31, 1926, as follows:
        Surplus on March 1, 1913_____ $65, 294. 10
        Deduct: Premium on 400 Shares_____ 87, 473. 40

Excess of premium deducted from earnings accumulated subsequent
    to February 28, 1913_____ 22, 179. 30

Balance of earnings accumulated subsequent to February 28, 1913,
    available for distribution, as of December 31, 1925_____ $38, 156. 55
Add: Earnings for 1926_____ 23, 945. 84
       Earnings for 1927_____ 14, 072. 61

       Total_____ $76, 175. 00
Less: Dividends paid in 1926_____ $16, 000. 00
       Dividends paid in 1927_____ 4, 000. 00
                                  20, 000. 00

Surplus or earnings available for distribution on January 1, 1928__ $56, 175. 00
Earnings for year 1928_____ $33, 090. 40
Add: Earnings for period January 1, 1928, to February 29, 1928__ 5, 334. 24

Earnings available for distribution on February 29, 1928_____ $61, 509. 24
Amount distributable to the petitioners, one-half to each_____ $30, 754. 62

7. In his income tax return for the year 1928, each of the petitioners reported the amount of $1,068.44 as dividends received from domestic corporations, by reason of the distribution made by the Windsor Tobacco Growers Corporation, on February 29, 1928, as aforesaid.

8. The value ($180,000) of the fixed assets of the Windsor Tobacco Growers Corporation distributed on February 29, 1928, included an unrealized appreciation in value of $127,297.79, of which $109,032.93 had accumulated prior to March 1, 1913, and $18,264.86 had accumulated between February 28, 1913, and February 29, 1928.

9. The 400 shares owned by the petitioner Whipple on February 29, 1928, comprised 200 shares purchased prior to March 1, 1913, and 200 shares received as a stock dividend in 1927. The basis of these 400 shares, computed in accordance with Section 113 of the Revenue Act of 1928, was $63,826.10. (The 200 shares purchased prior to March 1, 1913, cost $15,479.35; the March 1, 1913, value thereof was $63,826.10.)

10. The 400 shares owned by the petitioner Stewart on February 29, 1928, comprised 100 shares purchased prior to March 1, 1913, 100 shares purchased in 1917, and 200 shares received as a stock dividend in 1927. The basis of these 400 shares, computed in accordance with Section 113 of the Revenue Act of 1928, was $57,913.05. (The 100 shares purchased prior to March 1, 1913,

cost $10,000; The March 1, 1913, value thereof was $31,913.05. The 100 shares purchased in 1917 cost $26,000.)

Recast into chronological sequence, the facts are these: The corporation was organized before March 1, 1913. Before that date Stewart had acquired 100 shares for $10,000, and Whipple, 200 shares for $15,479.35. The total number of shares issued or outstanding is not shown, although perhaps we can assume it to be 400. On that date, according to the stipulation, the value of each share was $319.1305; the surplus of the corporation, $65,294.10; and the " unrealized appreciation in value ", $109,032.93. The mathematical disparity in these figures of March 1, 1913, is not cleared up by anything in the record.

In 1917 Stewart bought 100 shares at a cost of $26,000, or $260 a share.

On December 31, 1925, the earned surplus had increased since March 1, 1913, by $60,335.85, to $125,629.95.

In 1926 the net earnings were $23,945.84 and a dividend of $16,000 was paid to the four owners of 200 shares each. This left $7,945.84 addition to surplus, which brought accumulated earnings and undivided profits up to $133,575.79. The corporation then acquired and held in its treasury the 400 shares of the Steane and Olds estates, giving to them $127,473.40 in cash and securities, being $318.6835 a share. This $127,473.40 the Commissioner now treats as $40,000 return by the corporation of capital contribution, and $87,473.40 as " premium " paid out of surplus earnings. How he treated it for the purpose of 1926 tax to the Steane and Olds estates does not appear.

During 1927, at unstated times, the corporation earned $14,072.61, paid dividends of $4,000, and reissued the 400 shares of treasury stock as a stock dividend to Stewart and Whipple, making them, on January 1, 1928, the sole owners in equal shares of the 800 shares outstanding.

In 1928, between January 1 and February 29, the net earnings were $5,334.24. On the latter date, the " unrealized appreciation of assets " was $127,297.79, of which $109,032.93 existed prior to March 1, 1913, and $18,264.86 occurred after. On February 29, 1928, the corporation with due formality reduced the par value of its shares from $100 to $65, and distributed $183,706.14, consisting of $180,000 fixed assets (plantation and equipment) and $3,706.14 in cash.

The Commissioner treated $61,509.24 of the amount received by petitioners in 1928 as the distribution of an ordinary dividend taxable at surtax rates. The petitioner contends that the computation must proceed upon the assumption that the surplus of December 31, 1925, was disposed of to the Steane and Olds estates, and thus that

the 1928 distribution was, to a greater extent than the Commissioner has allowed, attributable to capital and surplus of March 1, 1913, and, hence, tax-free.

There are several questions implicit in these facts which, if the record were more complete, would still be difficult to answer satisfactorily. But they are eliminated from our decision both by reason of the scope of the Commissioner's determination and of the issues framed by the pleadings, and by the confused and inadequate facts which have been stipulated.

The respondent by an amended answer seeks an increase in the deficiency as the result of the newly pleaded concept of the distribution of February 29, 1928, as a distribution in partial liquidation. In support of this he points to the fact that the distribution of $183,706.14 by a method which included the reduction of par value was of such a large part of the corporation's fixed assets of plantation and operating equipment as necessarily to indicate an intention to liquidate. This is a plausible view of the distribution. But mere plausibilty is not enough to support such a contention, and since the Commissioner is the one who presents the issue he must suffer from the inadequacy of the proof. It is entirely possible that a corporation could distribute such a large percentage of its net assets and reduce the par value of its shares with no thought of liquidation of its business or stock or of winding up the corporate existence. It could with what was left have a purpose of carrying on a more limited business indefinitely. In addition to this, the question would be controlled by the statutory definition of partial liquidation, section 115 (h), and it may be seriously doubted, without deciding, whether the reduction in par value of all the outstanding shares can be said to be a " complete cancellation or redemption of a part of its stock " and whether, in the absence of evidence that a complete winding up is in contemplation, such a distribution and reduction of par value can be said to be " one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." We hold, however, that because of the inadequate evidence the respondent's contention that this was a distribution in partial liquidation can not be sustained.

Thus we are brought back to his original determination that this distribution was a dividend, a determination which the petitioner does not assail, and his further determination as to the extent to which such dividend is to be attributed to earnings and profits accumulated after March 1, 1913.

The evidence shows that at the time, December 31, 1926, when the corporation paid $127,473.40 to the estates of Steane and Olds in consideration for the turning back by them of their 400 shares,

there were accumulated earnings and undivided profits of $133,-575.79. While that transaction, being from the standpoint of the shareholders a complete liquidation of their shares, was by section 201 (c), Revenue Act of 1926, regarded as in full payment in exchange for the stock, it was also, as that statute clearly indicates, a distribution. Of course, as the last sentence of section 201 (c) provides, the extent to which it was properly chargeable to capital account ($40,000) was not to be considered a distribution out of earnings or profits under subdivision (b). Therefore, by subdivision (b), it was made out of the most recently accumulated earnings or profits and it absorbed as fully as possible the earnings or profits accumulated after March 1, 1913, which, as the facts show, amounted to $68,281.69. The fact that this distribution, being in liquidation, was not taxed as an ordinary dividend does not militate against its treatment as a distribution in accordance with the express language of the statute. This is especially so when both section 201 (b) of the 1926 Act and section 115 (b) of the 1928 Act apply "for all purposes of the act." Cf. *Hadden* v. *Commissioner*, 49 Fed. (2d) 709. The character of the payment in 1926 to Steane and Olds is governed entirely for tax purposes by the language and purpose of the revenue act, and not by the dictionary, by the nomenclature of the parties, or by the apportionment among the shareholders. *Lincoln National Bank* v. *Burnet*, 63 Fed. (2d) 131; affirming *Estate of John W. Brawner*, 23 B.T.A. 1304. Nor may it be governed by a purpose of the corporation to hold the shares thus acquired in its treasury and later use them in discharge of a stock dividend; even if the stipulated facts made it clear that such a purpose existed when in 1926 the shares were acquired.

The question whether a holding that the 1926 transaction was a statutory distribution is at variance with all the implications of *Woods Machine Co.* v. *Commissioner*, 57 Fed. (2d) 635, needs no answer in this proceeding. Corporate shares in the hands of shareholders are unquestionably different property from the corporate assets, but it does not follow that their character as property exists when the shares are held by the corporation itself, cf. *Eisner* v. *Macomber*, 252 U.S. 189. We need not decide, nor even recognize as a corollary, that when a large corporation buys a few of its shares on the stock exchange and soon resells them it makes a liquidation distribution and a subsequent issuance. The significance of such a transaction need not be determined until the issue is presented with all its circumstances. Here we have the simpler case of a small corporation with four shareholders paying off two shareholders who own half the shares, the tax significance of which arises under a fairly clear revenue statute.

Since the distribution of December 31, 1926, was in an amount greater than the earnings or profits accumulated after February 28, 1913, it was for present purposes a complete distribution of that amount, leaving at that time nothing for future distribution except (a) prior accumulated earnings and profits, (b) the increment reflected by the appreciation in value of assets, and (c) the original capital. Between December 31, 1926, and February 29, 1928, the corporation earned $15,406.85, and to this extent the distribution of the latter date was taxable as a dividend. Above that, it must be treated as a nontaxable distribution of March 1, 1913, capital to the extent of the petitioners' cost or 1913 basis of their shares, the excess being taxable as profit.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, dissenting: In the majority opinion it is held that when the Windsor Tobacco Growers Corporation acquired 400 shares of its stock on December 31, 1926, for cash and securities of an aggregate value of $127,473.40, it distributed by virtue of section 201 (b) of the Revenue Act of 1926 all of its earnings accumulated since February 28, 1913, in the amount of $68,281.69. I dissent. Section 201 provides, so far as material, as follows:

SEC. 201. (a) The term "dividend" when used in this title (except in paragraph (9) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

(b) For the purposes of this Act every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the basis of the stock provided in section 204.

(c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 202, but shall be recognized only to the extent provided in section 203. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of subdivision (g) of section 203 of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subdivision (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

The holding of the majority opinion can only be sustained by holding that the exchange of assets for the 400 shares of stock in

question was a " distribution " within the meaning of paragraphs (b) and (c) quoted above.

The definition of the word " distribute " is " To divide among several or many; to deal out; apportion; allot." Each stockholder of the Windsor Tobacco Growers Corporation stood on the same plane; that is, there was only one class of stock. If a dividend had been paid by the corporation the dividend would have been distributed pro rata to the shareholders. If the assets had been divided among the stockholders in liquidation there would have been a pro rata apportionment to the several shareholders, and this is true whether there was a division of all of the assets or only a part of them.

I can not subscribe to the view that, where a corporation acquires a portion of its shares not for cancellation but for subsequent sale or for reissuance to its stockholders as a stock dividend, the amount paid in the acquisition of the shares is a distribution of the amount paid therefor within the contemplation of section 201. The reacquirement by a corporation of a portion of its shares and the resale thereof or the reissuance thereof is a transaction too common to be ignored. As was stated by the circuit court of appeals in *Commissioner* v. *Wood's Machine Co.*, 57 Fed. (2d) 635; certiorari denied, 287 U.S. 613:

* * * where * * * a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss, we perceive no sufficient reason why the gain or loss should not be taken into account in computing the taxable income. * * *

The shares of stock of a corporation constitute property separate and apart from the property of the corporation. It may have a situs entirely independent of the situs of the assets of the corporation or even of the situs of the stockholder. Cf. *DeGanay* v. *Lederer*, 250 U.S. 376; *Commissioner* v. *Brooks*, 288 U.S. 378.

The facts here are that the corporation acquired 400 shares of its capital stock on December 31, 1926, at a cost of $127,473.40. The basis for the gain or loss to the stockholders selling the 400 shares is laid down by section 202 of the Revenue Act of 1926. If they realized a gain upon the transaction it is taxable to them, and if they realized a loss they are entitled to deduct the loss. The stipulated facts do not show that the corporation's surplus or earnings were affected by such transaction. Neither did the corporation distribute anything to its stockholders when it reissued the 400 shares acquired as a stock dividend. *Hugh R. Wilson*, 3 B.T.A. 957. The only distributions by the corporation, so far as shown by the stipulated facts, subsequent to December 31, 1926, were the payment of dividends to its stockholders of $16,000 in 1926 and $4,000 in 1927,

and the distribution of February 29, 1928, at which time the corporation distributed to its stockholders $3,706.14 cash and fixed assets of a fair market value of $180,000. I think that the respondent was correct in refusing to allow the contention of the petitioners that there was a distribution of any of its earnings at the time the corporation acquired 400 shares of its stock from the estates of I. J. Steane and Alfred A. Olds for $127,473.40 and in contending that the corporation did distribute to the petitioners on February 29, 1928, the total amount of its earnings accumulated since February 28, 1913, less those which had been distributed as dividends.

A necessary corollary to the holding in the majority opinion is that whenever a corporation purchases any of its outstanding shares it distributes earnings accumulated since February 28, 1913. I can not believe that this is a proper construction of the statute.

BLACK and TRAMMELL agree with this dissent.