JOSEPH F. HINDES, TRUSTEE FOR ANNA E. POPE, TRUSTEE FOR JOHN W. EMERSON, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 61230, 61251–61253, 61282–61285, 61308–61311.

Promulgated December 6, 1933.

---

[1] Proceedings of the following petitioners are consolidated herewith : Joseph F. Hindes, Trustee Lillie E. White Trust; Joseph F. Hindes, Trustee Maggie M. Holding Trust; Joseph F. Hindes, Trustee Annie L. Murray, Fannie L. Murray and Sudie W. Murray Trust; Joseph F. Hindes, Trustee Florence Farley Preston Trust; Joseph F. Hindes, Trustee Anna E. Pope Trust; Joseph F. Hindes, Trustee Laura Duke Trust; Joseph F. Hindes, Trustee Daisy McVickar Trust; Joseph F. Hindes, Trustee Eleanor Preston Farley Trust; Joseph F. Hindes, Trustee Blanche Duke Trust; Joseph F. Hindes, Trustee Lola Duke Johnson Trust ; Joseph F. Hindes et al., Executors, Estate of Isaac E. Emerson.

*Vernon Cook, Esq.*, for the petitioner.
*William E. Davis, Esq.*, for the respondent.

OPINION.

GOODRICH: Respondent has determined deficiencies in income tax against petitioner as a trustee and as executor under the will of Isaac E. Emerson as follows:

| Name | Docket No. | Year | Deficiency |
|---|---|---|---|
| Annie L. Murray | 61253 | 1927 | $2,346.40 |
| Maggie M. Holding | 61252 | 1927 | 3,025.82 |
| Lillie E. White | 61251 | 1927 | 9,258.59 |
| | 61251 | 1928 | 2,548.87 |
| Laura Duke | 61284 | 1927 | 568.20 |
| Florence Farley Preston | 61282 | 1927 | 560.64 |
| Daisy McVikar | 61285 | 1927 | 1,235.38 |
| John W. Emerson | 61230 | 1927 | 430.90 |
| Anna E. Pope | 61283 | 1927 | 4,379.60 |
| Lola Duke Johnson | 61310 | 1927 | 560.64 |
| Blanche Duke | 61309 | 1927 | 560.64 |
| Eleanor Preston Farley | 61308 | 1927 | 3,374.50 |
| Estate of Isaac E. Emerson | 61311 | 1927 | 43,655.70 |
| | 61311 | 1928 | 13,060.63 |

All of the deficiencies arise upon respondent's determination that the return to Emerson of certain common stock, which he had previously transferred to the trustee, followed by the transfer by Emerson to the trustee of certain preferred stock, constituted a taxable exchange. Since a transaction identical except as to the number of shares occurred in each case, the determination of its character will serve to dispose of all the cases, which were consolidated. The facts were agreed to and we adopt the stipulation of counsel as our findings. For an understanding of the issue, a shorter statement will suffice.

Isaac E. Emerson, late of Baltimore, president and principal stockholder of the Emerson Drug Co., was a man of wealth and long enjoyed a large income. For many years prior to his death he had contributed more or less regularly to the support of a number of his relatives. Came a time when he decided to make definite provisions for such allowances and to that end, during the period 1919 to 1921, he created 14 irrevocable trusts, each for the benefit of certain of his relatives. As trust property, he transferred to the trustee shares of common stock of the Emerson Drug Co. in such amounts for each trust as he deemed desirable and suitable. Of one trust, Anna E. Pope was trustee; of all the others the trustee was

his close associate, Hindes, the petitioner. Generally the declarations provided for the periodical distribution of the trust income to the designated beneficiaries for life, and upon their deaths, to their children for a period of 10 years, at the end of which the corpus was to be distributed to those children or their issue; if there were no such issue, the corpus was to revert to the grantor or his estate. The terms of some of the indentures differed somewhat from that general outline, but not in a manner here material. It is conceded that the creation of these trusts was entirely gratuitous on Emerson's part; that, without any bargaining with the beneficiaries, and without discharging any legally recognizable obligation to them, he made these gifts.

Thereafter, Emerson became dissatisfied with what he had done, chiefly perhaps because he found he had given away so much common stock that he no longer held a two-thirds majority in the Emerson Drug Co., but also because the cash and stock dividends upon the common stock had resulted in a greater income to some of the beneficiaries than he had intended; moreover, he was convinced that preferred stock was more suitable as corpus of the trusts than common. In 1927 he undertook to rearrange the entire matter of allowances to his relatives and, as a beginning, wrote to each of the life-tenant beneficiaries this letter:

I have recently been going over certain of my business affairs and think it advisable to make some changes in the allowances which I have heretofore been giving you and others of my relatives. As this matter is covered by a trust agreement under which Mr. Joseph F. Hindes is trustee, it is necessary that you should sign the enclosed authorization addressed to him. Please attend to this as promptly as possible and I will let you know just what allowance I shall make you in the future under the new trusteeship.

The authorization mentioned is as follows:

You are trustee under a declaration of trust heretofore made by Captain Isaac E. Emerson in my favor. The making of this trust was entirely voluntary on Captain Emerson's part and was intended to be an allowance from him to me toward my support. He has recently written me to the effect that he wishes to make some changes in the schedule of allowances which he has made from time to time for various relatives, and I am writing this line to say that I am entirely satisfied that he and you as trustees should make any change whatsoever that he may see fit in regard to the trust in my favor.

In the cases here before us, all the life-tenant beneficiaries (but not the remaindermen, for they were not so requested) executed and delivered that authorization, whereupon Hindes and Mrs. Pope, in December 1927, assigned and delivered to Emerson the common stock which they held as trustees under the several declarations of trust.

At, or about, that same time Emerson executed a second set of trust indentures, each naming Hindes as trustee and assigning shares of preferred stock of the Emerson Drug Co. as corpus of the trusts.

In 1928 Emerson transferred additional preferred stock, increasing the corpus of one or more of the trusts. In five of the new trusts there were substantial changes, both as to beneficiaries and terms, from the old trusts which they supplanted; in two of the new trusts the life beneficiaries were the same but different remindermen were designated; while in seven of the new trusts the beneficial interests and terms were essentially the same as in the corresponding old trusts. In connection with the creation of the new trusts there was no agreement between Emerson, Hindes, or any of the beneficiaries other than evidenced by the letters above set out, and the determination of the amount of the corpus and the terms of the trusts were made by Emerson alone, without consultation with the trustee or the beneficiaries. By one of the new trusts both the value of the corpus and the annual income to the beneficiary were reduced; by the others the value of each corpus was substantially increased, although the income therefrom remained about the same as before.

Respondent has determined that the surrender by the trustee to Emerson of the common stock held as the corpus of each of the old trusts, and the transfer to the trustee by Emerson of preferred stock as the corpus for each of the new trusts, constituted an exchange of stocks, and was taxable, since section 203 (b) (1), Revenue Act of 1926, and section 112 (b) (1), Revenue Act of 1928, exclude an exchange of stocks from the classification of nontaxable transactions. He has paired each old trust with its corresponding new trust and, treating each pair as a taxing unit, has determined as a taxable profit the amount by which the value of the preferred stock exceeds the cost of the common stock held as corpus by the old trust. As to Emerson, he has determined as taxable profit the amount by which the value of the common stock, when returned to him by the trustee, exceeds the cost of the preferred stock transferred to the trustees for benefit of the second trusts. The values and costs of the respective stocks and the number of shares transferred are not in dispute; in short, it is conceded that respondent's computations respecting the amounts he treats as taxable profit are correct. The sole question for our determination is whether respondent erred, as petitioner contends he did, in treating these transactions as taxable exchanges.

We conclude that he did, for we see here not a taxable *exchange* of stocks, but, first, a gift by Emerson to his relatives; next, at his request, a voluntary relinquishment of it by the relatives, amounting to a gift back; and, finally, a second gift by Emerson. Such was the result accomplished, and the intervention of the trustees in the transfers to meet legal requirements does not here affect the character of the transactions. That the life beneficiaries might volun-

tarily and gratuitously relinquish their rights and make a gift back is not disputed. The point is suggested, but not pressed, that perhaps the life beneficiaries could not relinquish for the remaindermen and that the latter might follow the trust property or maintain an action for damages against the trustees. Those contingencies we need not consider for, as respondent points out on brief, such matters are collateral and immaterial to the issue before us, and we may regard the transactions as valid, since, so far as our record shows, the parties at interest so accept them. See *Francis M. Camp*, 21 B.T.A. 962; *Alfred T. Wagner*, 17 B.T.A. 1030; *Lewis E. Smoot*, 25 B.T.A. 1038.

Respondent finds in the letter sent by Emerson to the life beneficiaries a promise of future allowances sufficient to serve as a consideration for a taxable exchange of stocks. We do not. The letter makes neither promise nor definite undertaking; at most it only infers a continuance of an allowance subject to such change as Emerson desired to make. Even so, the phrase " changes in the allowances " might mean—and the facts concerning the new trusts show that it did mean—that Emerson might give more, less, or nothing, according to his own whim or judgment. Apparently— and this is the test of the nature of the relinquishment—that was satisfactory to the trust beneficiaries. They felt that Emerson, having made them gifts, had the right to retract, and they were content to await his voluntary bounty which previously had not failed them—a resignation that Emerson giveth and Emerson taketh away. Nor do we, as respondent urges, regard Emerson's desire to repossess the common stock as the controlling factor in determining the nature of the transactions. While he wanted the common stock, he also thought preferred stock, because of its greater security, was better for trust property, and his principal motive was to make " changes in the allowances which I have heretofore been giving  *  *  *  my relatives."

What is the distinction between a gift, and an exchange of stock, taxable under the statute? For the purposes of this case we need only point out a transaction which discloses the difference more clearly and forcefully than we could in discussion. Upon brief both parties tell us that a beneficiary of one of the first trusts (Mrs. Keith) did not accede to Emerson's request to authorize the trustee to permit a change in the trust. After bargaining, a contract was entered into whereby she agreed to the exchange of 1,000 shares of common stock held by the trustee for her benefit for 12,000 shares of preferred stock and $5,000 in cash. Clearly, that transaction was a taxable exchange; respondent so determined and petitioner concedes it. The case of the Keith trust is not now before us, but the transaction is involved in the estate case, Docket No. 61311, wherein

the tax to be imposed upon the profit arising from that exchange may be determined upon settlement.

Respecting the transactions involved in the cases now before us, we conclude that respondent erred in treating as taxable exchanges of stock the surrender of common stock to Emerson by the trustees of the old trusts and the transfer of preferred stock by Emerson to the trustee of the new trusts.

Reviewed by the Board.

*Judgment will be entered for petitioners in all cases except Docket No. 61311, wherein judgment will be entered under Rule 50.*