934

ISAAC W. FRANK TRUST OF 1927, WM. K. FRANK, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98274.  Promulgated July 9, 1941.

*S. Leo Ruslander, Esq., Samuel Kaufman, Esq.,* and *Louis Caplan, Esq.,* for the petitioner.

*Orris Bennett, Esq., Frank Donohoe, Esq.,* and *J. Harrison Miller, Esq.,* for the respondent.

940

OPINION.

DISNEY: The respondent contends upon brief that the Frandel Partnership should be disregarded upon the ground that its sole purpose was tax avoidance and therefore it had no business purpose; that the trust agreements do not authorize the trusts to become members of a partnership; and that the Revenue Act of 1936 does not recognize partnerships composed of trusts.

1. *Was the formation of the partnership for the sole purpose of avoiding taxes?*—It is apparent from the evidence of record that tax consciousness prompted some of the transactions preceding the 1936 distribution. The reports contain numerous cases in which the object of the transaction in controversy was tax reduction or complete avoidance within the limits of law. The right of a taxpayer to take advantage of lawful means to reduce the amount of his taxes or avoid them altogether is well recognized. *Gregory* v. *Helvering*, 293 U. S. 465, in which the Court said:

\* \* \* It is quite true that if a reorganization in reality was effected within the meaning of subdivision (b), the ulterior purpose mentioned [motive of taxpayer to escape tax] will be disregarded. The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. \* \* \*

The creation of trusts for tax-saving purposes is not fatal, *Elizabeth K. Lamont*, 43 B. T. A. 61, and it is proper for trustees to perform their duties in such a way as to save taxes. *John D. McKee et al., Trustees*, 35 B. T. A. 239. The doctrine applies to partnerships. *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; certiorari denied, 296 U. S. 641. *Higgins* v. *Smith*, 308 U. S. 473, involving the deductibility of a loss on a sale of securities by Smith to a wholly owned corporation whose transactions were restricted largely to dealings with its stock-

holder, proceeds from the theory that substance may be followed by the Government in instances where the method adopted to carry the plan into effect was unreal or a sham. A similar case is *Griffiths* v. *Helvering*, 308 U. S. 355. The case of *Campana Corporation* v. *Harrison*, 114 Fed. (2d) 400, involved excise taxes and turned upon the fact that the sales to a corporation having the same stockholders were not arm's length transactions. A like case is *Continental Oil Co.* v. *Jones*, 113 Fed. (2d) 557. The record discloses that the Frandel Partnership was not an organization created with tax avoidance as its primary or sole object.

2. *Was it formed for a business purpose?*—We think it was created for such a purpose and to relieve, in the opinion of the trustees, the situation that had developed on account of distributions of capital to beneficiaries of the trust. The respondent argues, however, that the trustees could have solved the difficulties by obtaining releases from all of the parties in interest. The trustees decided upon the formation of a Delaware partnership as the best means of solving the problem. That a different course of procedure would have been just as effective, or simpler, is not controlling. Our decision must proceed from the facts as they exist, not from what might have been done.

3. *Did the trustees have power to organize the partnership?*—The trustees of petitioner had power to invest and reinvest the principal of the trust "in the discretion of the trustees, in stocks, interest-bearing securities and/or first mortgages upon improved real estate," without limitation to securities designated under Pennsylvania laws as trust investments. The other trusts, in addition to like authority, empowered the trustees "to do all things and make any and all contracts concerning this trust estate that I could do or make if I continued to own the same." During the lifetime of the grantor the corpus of petitioner was transferred to I. W. Frank, Inc., for stock of the corporation and thereafter the assets, together with the corpus of the two trusts created by Isaac W. Frank and his wife on May 21, 1930, were exchanged for stock of the Frank Securities Corporation. The corporation at all times thereafter during the lifetime of the grantor held the original assets not only of petitioner, but of the other two trusts. This discloses intent on the part of the grantor to pool the corpus of his trusts with other assets in a single enterprise. The plan was in effect until the formation of the partnership in 1935, when the administration of the original assets was divided between the partnership and the corporation.

There was not at any time any actual delegation of power by the trustees. The grantor's two sons and his son-in-law were throughout 1935 and 1936 the directors of the Frank Securities Corporation and trustees of the trusts, and consequently there was not any relinquishment or delegation of power in favor of other persons. Any delega-

tion was to themselves serving in a like capacity in other trusts. The assets of petitioner were subject to losses sustained in the administration of the assets of the other trusts. Each trust, however, received the benefit of gains realized by the other trusts, and the pooling arrangement had been in force since 1930, partly during the lifetime of the decedent. The intervention of the partnership created no substantial change in the real nature of the pooling venture.

The segregation of the assets in common enterprises was regarded for the best interests of the beneficial owners of the trust property, and we can not say that this was an abuse of discretion, or that the act was unreasonable. Cooperation with others is not a breach of a trustee's duty to the beneficiary. Sec. 171, Restatement of Trusts.

It does not appear that the beneficiaries of the trusts ever questioned the power of the trustees to invest corpus in capital of a partnership. The respondent has recognized the Frandel Partnership as a partnership for purposes other than the distribution in question here. If the trustees had no authority to form the partnership, the respondent, not being a party in interest, is in no position to question it. See *Joseph F. Hindes, Trustee*, 29 B. T. A. 498; *Francis M. Camp*, 21 B. T. A. 962; *Lewis E. Smoot*, 25 B. T. A. 1038; *Joseph S. Finch & Co.*, 23 B. T. A. 1153; *Alfred T. Wagner*, 17 B. T. A. 1030; *Albert G. Dickinson*, 23 B. T. A. 1212.

4. *Statutory authority for partnership.*—The respondent cites sections 181 and 1001 (a) (1) to support his contention that a partnership which has trusts as partners is not recognized by the Revenue Act of 1936. The petitioner refers us to sections 161 and 162.

The respondent has recognized the estate of a decedent as a partner under sections 1 and 218 (a) of the Revenue Act of 1918, which read the same as sections 181 and 1001 (a) (1), *supra*. I. T. 2026, C. B. III–1, p. 213. He has also held a corporation to be liable under the same act on its share of the profits of a foreign partnership of which it was a member. O. D. 230, C. B. No. 1, p. 212. We have heretofore recognized New York partnerships having a trust as a member. *M. A. Reeb*, 8 B. T. A. 759; *Charles E. Ives*, 29 B. T. A. 822.

None of the revenue acts prior to the Revenue Act of 1932 contained a definition of the term partnership. Section 1111 (a) (3) of the 1932 Act reads as follows:

(a) When used in this Act—

\*     \*     \*     \*     \*     \*     \*

(3) The term "partnership" includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation; and the term "partner" includes a member in such a syndicate, group, pool, joint venture, or organization.

The definition was continued in subsequent acts. Sec. 801 (a) (3), Revenue Act of 1934; sec. 1001 (a) (3), Revenue Act of 1936; sec. 901 (a) (3), Revenue Act of 1938; sec. 3797 (a) (2), Internal Revenue Code.

Any doubt as to the meaning of sections 181 and 1001 (a) (1), *supra*, is dispelled by the statutory definition of the term partnership as used in revenue acts commencing with the 1932 Act. The provision does not require the members of the organization to be individuals. If the Frandel Partnership is not an ordinary partnership, it is a partnership within the statutory definition. *Joseph L. Selling*, 22 B. T. A. 920; affd., 64 Fed. (2d) 712, relied upon by respondent, involved the Revenue Act of 1921, and *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110, cited therein, related to tax liability under the Revenue Act of 1918. We think the Frandel Partnership is a partnership within the meaning of the Revenue Act of 1936. *Dolores Crabb*, 41 B. T. A. 686.

5. *Basis for computing gain or loss.*—The contention of the petitioner is that, since the combined basis of the stock of the Frank Securities Corporation contributed by the three trusts to the partnership is in excess of the value of the property distributed by the corporation to the partnership in 1935 and 1936, as determined by the respondent, no gain was realized. In his determination of the deficiency the respondent computed gain of $542,802.07 by allocating to petitioner a pro rata share of the distribution of securities in 1935 and 1936 based upon its 34.78 percent interest in the partnership, the amount being $1,113,191.06, and deducting therefrom petitioner's adjusted basis of $570,388.99. The point of difference between the parties is whether gain or loss to the partnership on the distributions should be computed on an aggregate basis of all of the stock or the separate basis of each partner.

No cases are cited by either party in which the precise question was presented for decision. Petitioner argues that, while section 113 (a) (13) of the Revenue Act of 1936 [1] requires a partnership to use the transferor's basis, it is silent as to situations such as in the instant case, where

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(13) PARTNERSHIPS.—If the property was acquired, after February 28, 1913, by a partnership and the basis is not otherwise determined under any of the paragraphs (1) to (12), inclusive, of this subsection, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. If the property was distributed in kind by a partnership to any partner, the basis of such property in the hands of the partner shall be such part of the basis in his hands of his partnership interest as is properly allocable to such property.

there were simultaneous contributions in kind by several partners of identical property, and, since section 183 requires that the net income of a partnership be computed in the same manner and on the same basis as an individual, the rules applicable to individuals would apply to partnerships. The cases of *Standard Fuel & Material Co.*, 29 B. T. A. 51; *Cyrus S. Eaton*, 37 B. T. A. 715: and *Raoul H. Fleischmann*, 40 B. T. A. 672, cited by petitioner, involved different facts and are not decisive of the question.

Prior to the Revenue Act of 1934 there was no statutory provision specifying the basis to be used by a partnership for a computation of gain or loss on the sale of property contributed by a partner. The Commissioner contended that the basis should be cost to the partner. G. C. M. 10092, C. B. X–1, p. 114. This Board and the courts declined to adopt the view of the Commissioner and held that the basis was the value of the property at the time of its contribution to the partnership. *Edward B. Archbald*, 27 B. T. A. 837; affd., 70 Fed. (2d) 720; certiorari denied, 293 U. S. 594; *Helvering* v. *Walbridge*, 70 Fed. (2d) 683; certiorari denied, 293 U. S. 594; *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; certiorari denied, 296 U. S. 641; *United States* v. *Flannery*, 106 Fed. (2d) 315; *Carroll E. Donner et al., Guardians*, 32 B. T. A. 364. The Commissioner adhered to the rule set forth in G. C. M. 10092 pending the outcome of further litigation of the question. Mim. 4311, C. B. XIV – 1, p. 208. This Board continued to follow the *Archbald*, *Walbridge*, and *Chisholm* decisions. *Cyrus S. Eaton, supra.*

While this conflict existed between decisions of the Board and the courts, and rulings of the Commissioner, changes in the partnership provisions of the existing revenue law were being considered by the Treasury Department and committees of Congress to prevent evasion of tax by the use of the partnership form of doing business. Hearings before the Committee on Ways and Means, Revenue Revision, 1934. The consideration resulted in the enactment of section 113 (a) (13), *supra.*

The new provision in question provides in unambiguous language that, upon the sale of property contributed by a member of a partnership, gain or loss shall be determined not upon the basis of the fair market value of the asset at the time of its contribution, as had been held by the Board and the courts, but upon the basis of cost or other basis of the contributing partner, adjusted for gain or loss to the contributor at the time of transfer, in accordance with the method outlined in G. C. M. 10092, *supra.* The object was to prevent stepped-up basis resulting for contributions of property which had appreciated in value. The intent of section 113 (a) (13), aside from its clear language, is

shown by reports of committees of Congress.  In Report No. 704, on the Revenue Act of 1934, the Committee on Ways and Means said:

The subcommittee and the committee have made a careful study of the taxation of partnerships.  It has been strongly contended that many large partnerships, particularly those engaged in the banking and security business, have been the vehicle of wide-spread tax avoidance.  It has been pointed out that wealthy partners have applied partnership losses against their individual incomes, with the result that in some of the past few years they have paid no individual income taxes.  If any avenue of escape from the income tax through the use of the partnership provisions has been left open in the past, it is important that it should be completely closed at this time.

\*     \*     \*     \*     \*     \*     \*

The committee also proposes two important changes in connection with the basis provisions, for the purpose of making it entirely certain that there can be no use of the partnership as a medium of tax avoidance in cases of sales of property, which has appreciated in value.  The result of the provisions of section 113 (a) (13) is that if property is purchased by a partnership the basis of such property to the partnership shall be its cost; but if the property is paid in by a partner then the basis to the partnership shall be the cost or other basis to the partner.  The committee believes that this provision simply makes specific the correct interpretation of the general provisions of the present law. \*   \*   \*

Identical language appears in the report of the Finance Committee of the Senate.  Rept. No. 558, p. 18.

If a partnership sold the specific asset contributed by one of its members, there can be no doubt that the gain or loss to the partnership under section 113 (a) (13) would be measured by the difference between the selling price and the basis the property had in the hands of the transferor.  Accordingly a sale by the partnership of the shares of stock contributed by petitioner would have resulted in gain or loss to the firm computed on the basis of the stock in the hands of petitioner.

We fail to see how the result could be different under the circumstances herein, where there were simultaneous contributions of like property.  The formation of partnerships generally involves concurrent transfers of assets by the members and the property of the firm is frequently of a like kind.  There is no indication that Congress intended to exclude such transactions from the general terms of the provision in question.

The regulations under the provision [2] recognize no basis other than the one to the contributing partner.  This obviously excludes a basis

---

[2] ART. 113 (a) (13)–1.  [Regulations 86.]  *Property contributed in kind by a partner to a partnership.*—The basis of property contributed in kind by a partner to partnership capital after February 28, 1913, is the cost or other basis thereof to the contributing partner. \* \* \* On the sale or other disposition of such contributed property by the partnership the gain or loss, determined on such transferred basis, adjusted as required by section 113 (b), shall be prorated in determining the distributive shares of the partners according to their gain or loss ratios on the disposition of a partnership asset under the partnership agreement.

representing the combined bases of all the contributing partners, as contended by the petitioner. Subsequent revenue acts and regulations promulgated thereunder contain like provisions. Sec. 113 (a) (13), Revenue Acts of 1936 and 1938, and Internal Revenue Code; article 113 (a) (13)—1, Regulations 94, 101, 103.

It seems clear that Congress intended that no contribution of property to a partnership by a member of the firm should result in a change of basis of the asset in the hands of the partnership. Combining the bases of the partners would work such a change. The reenactment by Congress of section 113 (a) (13) in subsequent revenue acts without change discloses legislative approval of the regulations. *Brewster* v. *Gage*, 280 U. S. 327.

We do not regard as important the consolidation on the date of receipt by the partnership of the six stock certificates, two from each partner, into one certificate for 10,260 shares. The purpose of the statute to continue in the hands of the partnership the basis of the contributing partner may not be defeated by a simple transaction of that nature having no substance. The respondent committed no error in using as a basis for the computation of gain the basis the stock had in the hands of the transferor, the petitioner. He did err, however, in the method he used to allocate the distribution against such transferor's base. He allocated thereto 34.78 percent of the distribution, because 34.78 percent was petitioner's distributive share of the partnership income. The distributions were made pro rata on all of the 10,260 shares of outstanding stock. He should have allocated to the base of the 3,521 shares 3521/10260 of the distribution, i. e., in proportion to the transferor's contribution of 3,521 shares to total partnership capital of 10,260 shares of stock in the Frank Securities Corporation. The petitioner's distributive share of partnership income does not determine allocation of distribution to base. It does, under section 182, Revenue Act of 1936,[3] determine the amount of the partnership net income arising from profit in the distribution which should be included in petitioner's income. Therefore, 34.78 percent of the partnership profit from the distribution, which the parties seem to agree is the same as its net income, should be included in computing petitioner's net income.

6. *Character of the distributions.*—In view of our holding on the issue as to the proper basis, it will be necessary to decide the alternative question raised by the petitioner concerning the character of the distribution.

---

[3] SEC. 182. TAX OF PARTNERS.

There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year.

The petitioner contends that the property received by the partnership was not a liquidating dividend and that section 115 (d) [4] applies. The respondent contends that the distributions were made under section 115 (c).[5]

In *T. T. Word Supply Co.*, 41 B. T. A. 965 (980), we said:

\* \* \* The liquidation of a corporation is the process of winding up its affairs by realizing upon its assets, paying its debts, and appropriating the amount of its profit and loss. It differs from normal operation for current profit in that it ordinarily results in the winding up of the corporation's affairs, and there must be a manifest intention to liquidate, a continuing purpose to terminate its affairs and dissolve the corporation, and its activities must be directed and confined thereto. A mere declaration is not enough, and the question whether a corporation is in liquidation is one of fact. *W. E. Guild*, 19 B. T. A. 1186; *Fred T. Wood*, 27 B. T. A. 162. \* \* \*

The decisive factor has been said to be "whether the distribution was made with the intent to maintain the corporation as a going concern or with the intent to liquidate the business." *Horn & Hardart Baking Co.* v. *United States*, 34 Fed. Supp. 89.

The respondent contends that the intent during and after 1935 was to liquidate the corporation, and that, accordingly, the 1935 and 1936 distributions were two of a series of distributions in liquidation. The evidence here does not support such a finding.

The uncontradicted evidence of petitioner's witnesses is that the 1935 distribution was not part of a plan to liquidate the corporation at that time or in the future, but for the purpose of giving the partnership assets of a character to enable it to actively engage in

---

[4] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(d) OTHER DISTRIBUTIONS FROM CAPITAL.—If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property.

[5] (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. For the purpose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.

business and earn income available for distribution to life beneficiaries without incurring additional liability of the trustees for distributions out of capital. Thereafter the partnership carried on a business of dealing in investments and the corporation continued its usual business affairs with less assets. A further distribution was made in 1936 for similar reasons. Some consideration was given to liquidation under provisions of the Revenue Act of 1936, but they were not regarded as favorable, from a tax viewpoint, and no action to that end was taken. No plan of liquidation was adopted until the passage of the Revenue Act of 1938, and the decision was made at that time because of beneficial provisions of the statute. We find no connection, direct or indirect, between the distribution in 1938 and the distributions made in 1935 and 1936.

A partial liquidation is defined as "a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock." Sec. 115 (i).[6]

There was no cancellation or redemption of a part of the corporation's stock in 1935 or 1936. The one certificate held by the partnership for all of the corporation's stock remained outstanding until the dissolution of the corporation in 1938.

The reduction of capital at the close of 1935, resulting in the conversion of a deficit into surplus, and the change made in 1936 in the face value of the corporation's stock from no par value to a value of $1 per share, are not decisive. Neither had any connection with a plan of liquidation or in any wise altered the investment of petitioner. The partnership continued to be the holder of all of the corporation's stock. *Hellman* v. *Helvering*, 68 Fed. (2d) 763; *Rheinstrom* v. *Conner*, 33 Fed. Supp. 917; *John B. Stewart*, 29 B. T. A. 809; *W. & K. Holding Corporation*, 38 B. T. A. 830.

In *Tecla M. Straub*, 29 B. T. A. 216; affd., 76 Fed. (2d) 388, there was proof that the corporation had been winding up its affairs for four years and in *Dill Manufacturing Co.*, 39 B. T. A. 1023, there was a retirement of stock. Such facts are not present here.

We conclude that the distribution made in 1936 was not a liquidating dividend and that it is taxable under section 115 (d).

7. *Fair market value of the distributions.*—The valuations determined by the respondent for the securities distributed by the corporation to the partnership in 1935 and 1936 are based upon market or quoted prices without regard to blockage. The 1935 distribution consisted of about 35,000 shares of stock of eight corporations, not

---

[6] (i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

less than 1,000 shares of any corporation. The distribution in 1936 consisted of about 26,000 shares of stock of 36 corporations in blocks of from 25 to about 2,500 shares, and bonds of a face value of about $500,000, of which $450,000 were real estate bonds and, the remainder were bonds of the New York Central & Hudson Railroad. The railroad bonds and most of the stocks were listed on the New York Stock Exchange and some of these were also traded in on other exchanges. The real estate bonds were unlisted securities. The values found by the respondent are, in general, the mean between the high and low selling prices on the basic dates or the bid and asked prices on unlisted securities.

The petitioner offered testimony of three witnesses to establish lower valuations. In some instances the valuations of these witnesses agree with the values determined by the respondent. Their aggregate value for the stocks and railroad bonds is only about $190,-000 less than the total value determined by the respondent. Only one of the witnesses testified on the value of the real estate bonds and his valuation is about $13,000 lower than the total value found by the respondent. All of them valued the securities at a discount on account of the volume involved. The two witnesses who testified concerning the stocks admitted that their values were speculative and conjectural.

Many of the stocks discounted by the witnesses on account of the number of shares involved were bought and sold in large volume. The effect on an active market of an offering of a large block of stock is a matter of proof, not of assumption. *Safe Deposit & Trust Co. of Baltimore, Executor*, 35 B. T. A. 259. The proof is lacking here. Market prices are the best evidence of the value of the stock. *Estate of Leonard B. McKitterick*, 42 B. T. A. 130. The evidence here as to value does not overcome, in our opinion, the *prima facie* presumption existing in favor of the respondent's valuations, and we have, accordingly, found values for the securities in accordance with his determination.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

Mellott, dissenting: I respectfully dissent from the holding of the majority to the effect that the Frandel Partnership is a partnership within the meaning of the Revenue Act of 1936. In the trust agreement the settlor granted, bargained, sold, transferred and set over unto the Bank of Pittsburgh National Association and to Isaac W. Frank, as joint trustees, certain securities "to have and to hold the said moneys and securities and the investments into which the same

may be hereafter converted and to invest and reinvest the same from time to time, in the discretion of the trustees, in stocks, interest bearing securities and/or first mortgages upon improved real estate * * *." They were to "collect, recover and receive, the interest, income and dividends upon said securities, money and investments, when due and payable" and to pay over not to exceed the sum of $60,000 annually to the donor. After the death of the donor "the trust shall continue as theretofore" and all of the net income is to be paid to the donor's sons and daughter. The trust is to end when the last surviving child of the donor is deceased and the donor's daughters-in-law and son-in-law shall have died or remarried. Any funds held by the trustees "arising from the sale or maturity of securities, or otherwise, shall be invested pursuant to the terms hereof in such securities as the trustee shall deem wise, such investments not being limited to such securities as are designated under the laws of Pennsylvania as 'trust investments'."

In my judgment the trustees had no power or authority to enter into such a partnership agreement as that shown in the findings or to "contribute" to the partnership the shares of stock held by them in trust. This would be a delegation of their trustee powers and duties to the other partners and subject the assets of the trust to the payment of partnership debts, contrary to the clear intent of the grantor. Moreover, an examination of the record indicates quite clearly not only "that tax consciousness prompted some of the transactions", as set out in the majority opinion, but that the sole purpose of the organization of the partnership was to minimize or altogether avoid Federal income taxes. Under such circumstances, even if the partnership were a valid entity, which I do not concede, it should be disregarded under the rationale of such cases as *Higgins* v. *Smith*, 308 U. S. 473; *Gregory* v. *Helvering*, 293 U. S. 465; and *Griffiths* v. *Helvering*, 308 U. S. 355.