Langeloth Townsite Company v. Commissioner. Gust J. Barbush v. Commissioner.
Langeloth Townsite Co. v. Commissioner
Docket Nos. 71279, 71287.
United States Tax Court
T.C. Memo 1961-21; 1961 Tax Ct. Memo LEXIS 327; 20 T.C.M. (CCH) 91; T.C.M. (RIA) 61021; January 30, 1961, Filed
*327 1. Held, that a 1950 transaction wherein the Langeloth Townsite Company transferred to Barbush, its sole stockholder, all of the outstanding capital stock of its wholly-owned subsidiary Langeloth Water Company, was a "distribution from capital" within the meaning of section 115(d) of the 1939 Code, and that accordingly, the Townsite Company realized no gain or loss from such distribution. 2. Held, that Barbush's basis for computing gain or loss on his subsequent sale of the Water Company stock to a third party, was the fair market value of said stock at the time the same was distributed to him. Such fair market value is determined. Sidney B. Gambill, Esq., and Robert F. Banks, Esq., for the petitioners. Gerald Backer, Esq., for the respondent. PIERCE Memorandum Findings of Fact and *328 Opinion PIERCE, Judge: Respondent determined deficiencies in the income taxes of the petitioners, as follows: Docket
Taxable
No.
Petitioner
year
Deficiency
71279
Langeloth Town-
site Co.
1950
$34,875.00
Yr. ended
71287
Gust J. Barbush
1/31/53
30,694.36 The cases were consolidated for trial. The issues for decision are: 1. Whether the corporate petitioner, Langeloth Townsite Company, realized taxable gain in its taxable year 1950, when it transferred to its sole stockholder, petitioner Gust J. Barbush, all the outstanding shares of capital stock of its wholly-owned subsidiary, Langeloth Water Company. (Issue in Docket No. 71279.) 2. What amount of gain or loss did the individual petitioner, Gust J. Barbush, realize in his taxable year ended January 31, 1953, when he sold to a third party all of the same shares of capital stock of Langeloth Water Company above mentioned? The answer to this will turn on the amount of his basis for such shares at the time of the sale. (Issue in Docket No. 71287.) Findings of Fact Some of the facts have been stipulated. The stipulations of fact, together with the exhibits identified therein, are incorporated *329 herein by reference. Petitioner Langeloth Townsite Company is a corporation organized and existing under the laws of the Commonwealth of business at Langeloth, Washington County, Pennsylvania. It at all times material maintained its accounts and filed its income tax returns on a calendar year basis, and in accordance with an accrual method of accounting. Its return for its taxable year 1950 was filed with the collector of internal revenue at Pittsburgh, Pennsylvania. Petitioner Gust J. Barbush is an individual having his principal office at Langeloth, Pennsylvania. He at all times material maintained his accounts and filed his income tax returns on the basis of fiscal years ended January 31, and in accordance with the cash receipts and disbursements method of accounting. His return for his taxable year ended January 31, 1953, was filed with the director of internal revenue at Pittsburgh, Pennsylvania. Preliminary facts re Langeloth Townsite Company and its subsidiary, Langeloth Water Company American Metal Company, Ltd. (hereinafter called "American Metals") was, during all periods here material, a New York corporation. It was incorporated prior to 1900; and, operating through *330 a consolidated organization consisting of itself and several domestic and foreign subsidiaries, it carried on a general business of producing, treating and selling nonferrous metals. In 1916, one of American Metals' wholly-owned subsidiaries, American Zinc and Chemical Company, a Pennsylvania corporation (hereinafter called the "Zinc Company"), was engaged in operating a zinc smelting plant near Langeloth, Pennsylvania, for the processing of zinc ore shipped in from Colorado. And at this same time, another of American Metals' wholly-owned subsidiaries, Langeloth Coal Company (hereinafter called the "Coal Company"), was engaged in operating a coal mine adjacent to said zinc smelting plant, where it produced the coal used in said plant. The Zinc Company had commenced the construction of its smelting plant in about 1914; and, beginning in the latter part of the year 1915, it had, in connection with its project, begun to construct houses for the use of employees. The community known as Langeloth, where the smelting plant and coal mine were located, was not an incorporated municipality; rather, it was at the time mentioned, and still is, a part of Smith Township, Washington County, *331 Pennsylvania. It is located on a branch line of the Pennsylvania Railroad, about 25 or 30 miles west of Pittsburgh. The nearest town is Burgettstown, Pennsylvania, which is only about one mile distant. Other nearby cities include: Weirton and Wheeling, West Virginia; Steubenville, Ohio; and Washington, Pennsylvania, which is the county seat of Washington County. On July 27, 1916, American Metals organized another wholly-owned subsidiary, the petitioner Langeloth Townsite Company (hereinafter called "Townsite Company"); and about two years later on June 17, 1918, it organized as a wholly-owned subsidiary of said Townsite Company, the Langeloth Water Company, a Pennsylvania water utility corporation (hereinafter called the "Water Company"). The purpose for organizing these two last-mentioned corporations (the Townsite Company and the Water Company), and also the principal functions which these two corporations thereafter performed, was to develop a socalled "company town" for the use of employees of the above-mentioned zinc plant and coal mine. This project, which was given effect, included: The acquisition from the Zinc Company of between 300 and 400 acres of land located adjacent *332 to said plant and mine; the laying out and maintenance of streets; and the building of approximately 300 dwelling houses, together with stores and community centers; and the furnishing of water. The Townsite Company was organized with only $5,000 capital stock, represented by 100 issued and outstanding shares of the par value of $50 each. No additional or other shares were ever issued; and all of said issued and outstanding shares were, at all times from the date of Townsite's incorporation until June 4, 1948, owned by American Metals. The latter company's cost basis therefor, throughout said period, was $5,000. The Water Company, on the other hand, had at all times only $500 of capital stock, represented by 5 issued and outstanding shares of the par value of $100 each. All of these issued and outstanding shares were owned by the Townsite Company, from the time when the Water Company was organized until January 1950. The Townsite Company's cost basis therefor, throughout said period, was $500. Substantially all the real estate and cash which the Townsite Company and the Water Company used in developing the company town and its water system, and also part of the funds which were *333 thereafter employed in operating the same, were obtained through "advances" made to the Townsite Company by American Metals' subsidiary, the Zinc Company. The books of the Townsite Company shows that an "Advance" account with the Zinc Company was opened on September 30, 1916 (about 2 months after Townsite's incorporation), with a $5,000 credit; and that on October 1, 1916, this same account was credited in the amount of $42,180 and $334,628.48, representing respectively transfers of real estate and of construction accounts to the Townsite Company by the Zinc Company. After other miscellaneous debits and credits to this account, there remained a credit balance therein at December 31, 1916 (about 5 months after Townsite's incorporation), of $542,368.01. Numerous other debits and credits to this account in subsequent periods left the following credit balances in said "advance" account on the books of Townsite Company, at the end of each of the following years: 1916
$542,368.01
1917
697,432.02
1918
689,049.39
1919
683,181.10
1920
667,493.52
1921
642,731.34
1922
638,628.10
1923
624,005.09
1924
609,339.70
1925
607,855.16
1926
587,593.84
1927
570,564.19
1928
565,013.83
1929
551,801.51
1930
536,953.12
1931
514,236.42
1932
503,552.18
1933
494,343.35
1934
506,378.31
1935
509,958.64
1936
509,951.74
1937
516,326.24
1938
517,534.79
1939
518,144.57
1940
503,122.09
1941
510,321.19
1942
515,845.24
1943
527,571.29
1944
565,320.80
1945
579,075.44
1946
594,397.60
1947
624,425.63
4/30/48
610,357.24
*334 There is no indication that any of said "advances" were evidenced by promissory notes or other written instruments, or that any interest thereon was ever charged by the Zinc Company or paid by the Townsite Company. The following balance sheet of the Townsite Company, as of April 30, 1948, shows that all of its real estate, and also all of its houses, had by said date been fully depreciated on its books of account: [1]
LANGELOTH TOWNSITE COMPANY
Balance sheet as of April 30, 1948
ASSETS
Cash
$ 7,605.71
Prepaid insurance
2,625.95
Building and repair supplies
1,925.96
Investment in Langeloth Water
Company
500.00
Property: Real Estate: Undeveloped
$ 21,500.00
Developed
137,038.75
$158,538.75
Less, Allowance for
amortization *
158,538.75
None
Houses
$425,001.01
Less, Allowance for
depreciation
425,001.01
None
$ 12,657.62
LIABILITIES
Accounts payable and accrued lia-
bilities
$ 7,347.36
Rents received in advance
218.40
Accounts payable to affiliated com-
panies: American Zinc & Chem-
ical Company
$610,357.24
Langeloth Water Com-
pany **
152,838.41
763,195.65
$770,761.41
Excess of Liabilities over
Assets
Represented by: Capital stock, $50 par
value, authorized and issued 100 shares
$ 5,000.00
Deficit
763,103.79
758,103.79
$ 12,657.62
*335 As regards the Water Company, its balance sheet as of April 30, 1948, similarly shows that all its plant, machinery and equipment had, by said date, been fully depreciated on its books of account: LANGELOTH WATER COMPANY
Balance sheet as of April 30, 1948
ASSETS
Cash
$ 1,124.10
Accounts receivable
109.68
Prepaid insurance
397.81
Account receivable from Langeloth Townsite Company *
152,838.41
Property: Undeveloped real estate
900.00
Water plant, machinery and equipment
$ 97,561.86
Less, Allowance for depreciation
97,561.86
None
$155,370.00
LIABILITIES
Accounts payable and accrued liabilities
$ 3,144.62
Received for damage to water shed
$ 33,618.41
Less, Amounts expended: Payments to power company
$ 522.38
Pipe and supplies purchased and now in
company's possession
29,279.91
29,802.29
3,816.12
$ 6,960.74
CAPITAL
Capital stock, $100 par value, authorized 50 shares,
issued 5 shares
$ 500.00
Surplus
147,909.26
148,409.26
$155,370.00
*336 As above mentioned, the facilities of the Townsite Company and the Water Company were constructed, maintained and operated for the convenience of the employees of their affiliated corporations, the Zinc Company and the Coal Company. The Townsite Company rented its houses to such employees at about $3 per room per month; and no charge was made to such employees for water, gas, or electricity. The result was that both the Townsite Company and the Water Company operated continuously at losses. Facts re Barbush's acquisition from American Metals and the Zinc Company of all interests in the Townsite Company and its subsidiary Water Company In about 1947, American Metals caused its subsidiaries, the Zinc Company and the Coal Company, to discontinue their operations of the zinc smelting plant and coal mine at Langeloth; and it then transferred part of such operations to a new plant in Oklahoma. Following this, portions of the zinc plant properties were sold to Climax-Molybdenum, Ltd.; and part or all of the coal mining properties were sold to Greensburg-Connellsville Coal & Coke Company. *337 Also, shortly thereafter, American Metals undertook to liquidate all of the interests which it and its subsidiary Zinc Company had in the company town of Langeloth, by advertising such town for sale as a single unit. It refused to accept any offers for purchase of the separate dwellings. The result of all this was that the residents of Langeloth, which then numbered approximately 1,000, were faced not only with a serious unemployment problem, but also with uncertainty as to whether they would be permitted to continue occupancy of their homes. Petitioner Gust J. Barbush was at that time, one of the residents of Langeloth. He had come to the United States from Greece in 1914, at the age of 16 years; he had thereupon become an employee at the Langeloth community store; and he had some time later and prior to 1948, become the owner and operator of said store. When he learned in about 1947, that the operations of the zinc plant and coal mine were about to be discontinued, and that there was prospect of the company town being sold, he became concerned as to what would happen to the residents of Langeloth. Thereupon he, together with three other leading citizens of the area, arranged a *338 meeting with representatives of American Metals, at which they attempted to induce said company to make arrangements whereby the zinc plant and the mine would continue to be operated; but such effort was unsuccessful. Shortly thereafter, Barbush went alone to New York City; and he there conferred with representatives of American Metals, with a view to making some arrangement whereby he might purchase the company town of Langeloth. This attempt also was unsuccessful, because he could not show that he had sufficient funds available with which to make such a purchase. Barbush, following the aforesaid unsuccessful efforts, then conferred with the principal officer of the bank in Burgettstown, regarding the possibility of his obtaining a substantial loan from that bank, which he might use in presenting a more attractive purchase offer to American Metals. The Burgettstown banker indicated that his bank was not large enough to handle such a loan; but he thereupon took Barbush to the parent bank in Washington. Pennsylvania, which was the Citizens National Bank of said city. There the matter of Barbush's proposed loan was further discussed. Following the above-mentioned discussion, the *339 principal officers of the Citizens Bank and its Burgettstown branch made several trips to Langeloth in late 1947 or early 1948, where they and Barbush together examined the properties of the Townsite Company and the Water Company. Thereafter, said banking officials prepared a written appraisal of the land and buildings of the Townsite Company, for consideration by the loan committee of the Citizens Bank. This appraisal indicated a value for said properties of $407,400. [2] The result was that, shortly thereafter, said loan committee furnished Barbush with a letter which he could take to American Metals, in which it was indicated that said bank would be willing to make Barbush a loan, secured by the Townsite properties as collateral, in the amount of $200,000. Barbush, after thus obtaining said letter from the Citizens Bank, again conferred with the officials of American Metals in New *340 York City, regarding the possibility of his acquiring ownership of the company town. Barbush's intent in attempting to arrange such a purchase, was not to liquidate the town as a business operation; but rather, it was to prevent the town being taken over by some real estate dealer who might evict the residents from their homes. Barbush's proposed plan for purchase appealed to American Metals; for it also desired to preserve the town if possible, and was anxious to find someone who would continue to operate it for the benefit of the residents who had been employees of its organization. Accordingly, under date of April 30, 1948, a written agreement was entered into by American Metals, the Zinc Company and Barbush, pursuant to which Barbush thereafter acquired all interests of the American Metals organization in the Langeloth community, in the following manner: 1. On June 4, 1948, American Metals transferred to Barbush all the issued and outstanding shares of the capital stock of Townsite Company, for a recited consideration of $1; and, at the same time, its subsidiary Zinc Company assigned to Barbush, all its open account claim against the Townsite Company for the above-mentioned *341 "advances" in the amount of $610,357.24, for a recited consideration of $301,152.87. Also, at some time in the latter part of 1947 when the negotiations were in progress, American Metals transferred to Barbush for use as his own residence, the largest and best house in the Langeloth area, for a recited consideration of $1. 2. The manner in which Barbush obtained the amount of the above-mentioned considerations totaling $301,153.87, was as follows: $25,000 was supplied to him by American Metals, upon his executing a series of five promissory notes; $76,153.87 was supplied out of his own funds, and through loans from friends and local banks. And the remaining $200,000 came from a loan which he obtained from the above-mentioned Citizens Bank of Washington, Pennsylvania. In order to provide collateral for this last-mentioned loan, Barbush, acting in accordance with the bank's suggestion and in his new capacity as president of the Townsite Company, arranged to have the latter company deliver to him a promissory note which contained a confession of judgment clause, in the amount of $610,357.24 (which was equal to the face amount of the above-mentioned "advances" of the Zinc Company); and *342 then, by exercising the confession of judgment clause on said note, he obtained from the local court, a judgment on the note. He thereupon assigned this judgment, together with all of his newly acquired stock in the Townsite Company, to the Citizens Bank as the collateral for the above-mentioned $200,000 loan. In addition, Barbush caused the buildings of the Townsite Company to be insured for the benefit of the bank as mortgagee, in the total amount of $388,468. [3]
At the time Barbush thus acquired his interests in the Townsite Company in 1948, he thought the same was worth about what he had paid. He estimated that Townsite's properties included about 220 acres of unimproved land, and about 100 acres which had been improved with dwelling houses and other buildings; he estimated that the value of the undeveloped land in January 1950 was about $50 per acre (reflecting a total value therefor of about $11,000); and he estimated that the value of the improved land and *343 buildings thereon, as of the same date, was about $200,000 to $225,000. After Barbush had thus acquired all interests in the company town of Langeloth, he proceeded to improve the town; and he was still continuing to improve the same at the time of the trial herein. On many of the houses, the roofs were replaced or repaired. Also as respects many of the houses, additional rooms were added; and, in many cases, new bathrooms, new furnaces, and other conveniences were installed. In addition, the condition of the streets was improved; and arrangements were made to provide bus service to nearby communities, where employment was available. Barbush, at all times after acquiring his interests in the company town, operated it through the corporate structure of the Townsite Company. Facts re Barbush's acquisition of the Water Company's stock from the Townsite Company, and his subsequent sale of the same During the year 1949, a group of Smith Township residents who lived outside the limits of the company town, called on Barbush and requested him to extend the facilities of the town's water system to their properties. Barbush told them that, because of the condition of the Water Company's *344 plant and his lack of capital, he was unable to meet their request. These Smith Township people thereupon proceeded to, and did, organize a public body under the Municipal Authorities Act of Pennsylvania, known as the Smith Township Municipal Authority, for the purpose of buying the stock of the Water Company. Thereafter, on January 25, 1950, the board of directors of the Townsite Company held a directors' meeting at which Barbush was present and acted as the chairman. Barbush there stated that the purpose of the meeting was to discuss the matter of having the Townsite Company make "a liquidating dividend to be paid to Gust J. Barbush, owner of all of the outstanding capital stock of the corporation." After discussion, the following resolution was unanimously adopted by the directors: RESOLVED, that the outstanding capital stock of Langeloth Water Company now owned by Langeloth Townsite Company, consisting of five (5) shares be assigned, set over and transferred to Gust J. Barbush, as a partial liquidating dividend of Langeloth Townsite Company; and the president of Langeloth Townsite Company be and is hereby authorized to execute the transfer of the said shares for and on behalf *345 of the corporation. Thereafter, at some unidentified date between the time of the above-mentioned meeting and February 6, 1950, all of the issued and outstanding shares of the Water Company were distributed by the Townsite Company to Barbush individually. The record does not show precisely the identity of the Water Company's assets at the time when Barbush acquired the stock of said company; but it does indicate that the company owned some land, some pipe line easements, certain water mains and pumps, and apparently some equipment for treating the water with chemicals. The water mains had been placed in the company streets many years previously, and their condition had deteriorated. The pumps were badly worn, and were being kept in operation only through application of "patchup" repairs. All of the plant, machinery, and equipment had been fully depreciated on the company's books. As before stated, the Water Company had been furnishing water to the community residents without cost, and Barbush had found that attempts to change this arrangement were resisted by said residents. The transfer of the Water Company stock to Barbush was recorded in said company's books, by an entry made *346 in its journal as of December 31, 1950, which reads as follows: Debit
Credit
Notes payable - G. J. Barbush
$140,000.00
Investment - Langeloth Water Co. stock
$ 500.00
Surplus
139,500.00
To carry into effect agreement G. J. Barbush to accept the
stock of the Langeloth Water Co. now considered as valued at
$140,000.00 in exchange for his forgiveness of a part of the
Company's debt on Notes Payable to him: Notes Payable to him $603,073.76
Reduction effected 140,000.00
Balance due him $463,073.76
To record action of the stockholders and Board of Directors dated 2/3/50. The foregoing entry, as shown by Barbush's petition herein, represented an attempt by some unidentified accountant to allocate a portion of Barbush's total investment in the Townsite Company, to the shares of Water Company stock which had theretofore been distributed to Barbush. On February 6, 1950, Barbush, acting individually as the new owner of all the Water Company's stock, entered into a written agreement with the newly organized Smith Township Municipal Authority under which Barbush agreed to sell, and the Authority agreed to buy, all of said Water Company stock for a *347 consideration of $200,000, of which $100,000 was to be paid in cash, and the balance was to be paid by delivery of $100,000 face amount of second lien bonds of the Authority. This agreement was made subject to the transaction being approved by the Public Utilities Commission of Pennsylvania. Subsequently, the parties to the agreement made certain amendments thereto, which included a provision that the amount of the cash payment to be made, was reduced to $88,070. Barbush's sale of the Water Company stock to the Authority was consummated in January 1953. At that time, Barbush transferred all of the issued and outstanding stock of the Water Company to the Authority; and the Authority made payment therefor by delivering to Barbush, $88,070 in cash, and $100,000 face amount of its bonds. The parties herein have stipulated that the total value of said bonds, at the time of their delivery to Barbush, was $25,000. Accordingly, the total value of the cash and bonds which Barbush received from his sale of the Water Company stock in January 1953, was $113,070. The Townsite Company did not report any gain on its 1950 income tax return from the transaction in which it transferred the Water *348 Company stock to Barbush; and also Barbush did not report the transaction in any return of his. The Commissioner, in his notice of deficiency to the Townsite Company, determined that it had realized gain of $139,500 from the transaction - representing the difference between the company's $500 basis for the Water Company stock, and the $140,000 consideration which the above-mentioned entry in its journal indicated had been received. As regards the subsequent transaction in January 1953 whereby Barbush sold the Water Company stock to the Smith Township Municipal Authority, Barbush reported on the return for his fiscal year ended January 31, 1953, that he had incurred a loss on said transaction, which he computed as follows: Gross sales price, $140,000; cost basis, $150,576.44; loss, $10,576.44. The respondent, in his notice of deficiency issued to Barbush, determined that Barbush had realized long-term capital gain from the transaction of $113,070, computed as follows: Cost basis, none; selling price, $113,070; net gain, $113,070. The fair market value of the shares of stock of the Water Company, at the time the same were distributed to Barbush by the Townsite Company in 1950, was *349 $60,000. The Townsite Company, at the time said stock was distributed to Barbush, had no earnings, profits or surplus. Opinion 1. The basic question involved under the first issue is how the 1950 transaction, whereby Townsite Company distributed all the outstanding capital stock of the Water Company to Barbush, should be classified and treated for income tax purposes. Both the Townsite Company and Barbush have adopted differing positions as to such classification. Townsite Company's board of directors, in adopting the resolution by which the distribution was authorized characterized the same as a "liquidating dividend to be paid to Gust J. Barbush, owner of all of the outstanding capital stock of the corporation"; but later, some unidentified accountant for the company made a journal entry in which he appears to have treated the transaction, not as a liquidating dividend to Barbush in his capacity as sole stockholder, but rather as a sale or exchange between the corporation and Barbush, in the latter's capacity as a creditor. Later, both the Townsite Company and Barbush, in their petitions and briefs herein, adopted positions which appear to fluctuate between these two differing *350 theories: On the one hand, they regarded the above-mentioned journal entry as being merely some accountant's expedient which should be forgotten; and on the other hand, they advanced arguments to the effect that the transaction should be treated as an exchange of assets between the corporation and Barbush as a creditor. The respondent, likewise, has assumed alternate positions. One of such positions is that deficiencies in tax should be determined against both the Townsite Company and Barbush, on the theory that Barbush, as a creditor, acquired the Water Company stock in exchange for claims for "advances" which he had purchased at about 49 per cent of their face value; and respondent's alternative position is that Barbush, either in the capacity of stockholder or a creditor, acquired the stock without having established that he delivered anything of value therefor - and hence that his basis for whatever he may have delivered in the exchange was zero. It is our conclusion, after examining and weighing all the evidence, that the transaction in which the Water Company stock was transferred to Barbush was, in substance and reality, a distribution by the Townsite Company of one of its *351 assets to its sole stockholder which was made without consideration; and that since such distribution was not made out of earnings and profits or surplus, and was not made in cancellation or redemption of any of Townsite's stock, it falls within that class of distributions which is designated in section 115(d) of the 1939 Code, as "Other Distributions From Capital." Said section of the Code provides as follows: (d) Other Distributions From Capital. - If any distribution made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. This subsection shall not apply to a distribution in partial or complete liquidation or to a distribution which, under subsection (f)(1), is not treated as a dividend, whether or not otherwise a dividend. What happened here, in substance and reality, was this. In 1948, both the American Metals organization and Barbush were *352 desirous that some arrangement be made whereby the community town of Langeloth might be preserved and operated for the benefit of the former employees of the American Metals organization. The result was that a transaction was thereupon effected, under which Barbush acquired, for a consideration of about $300,000 and in a "single package deal," all of the interests of the American Metals organization in said community town. Said interests included not only all the outstanding capital stock of the Townsite Company, which in turn held all of the outstanding capital stock of the Water Company, but also all claims of the American Metals organization against the Townsite Company, for the "advances" which had been made over a 32-year period, and which obviously represented in large part, equity capital that had been used in developing and operating the town. Also, shortly after Barbush had thus acquired all interests in the company town of Langeloth in said "package deal," he, as the sole stockholder and new president of the Townsite Company, caused that corporation to distribute out to him all of the capital stock of its wholly-owned subsidiary Water Company, so that he might sell the *353 same to the Smith Township Municipal Authority. The Townsite Company's board of directors characterized this transaction as a distribution to the company's sole stockholder; and Barbush has admitted, in his pleadings herein, that the journal entry subsequently made on the company's books may be properly disregarded, as an expedient attempt of some accountant to devise a method for reflecting the transaction. The effects of our foregoing conclusion, that the distribution of the Water Company stock to Barbush falls within the ambit of section 115(d) of the Code, are: That Barbush's cost basis for his equity interest in the Townsite Company (however the same may be evidenced or represented) was reduced by such distribution; that the amount of such reduction of basis was the fair market value of the Water Company stock at the time of its distribution ( Issac W. Frank Trust of 1927, 44 B.T.A. 934, 948-949; cf. section 115(j) of the 1939 Code); and that such fair market value of the stock distributed also became the basis of such stock for computing gain or loss on its subsequent sale by Barbush. Based on all the foregoing, we here hold that the Townsite Company realized *354 no gain or loss on its distribution of the Water Company stock to Barbush in 1950. 2. As regards the second issue, the basic question involved therein is, what was the fair market value of the Water Company stock at the time when it was distributed to Barbush in 1950. As heretofore stated, such value became his basis for determining gain or loss on the subsequent sale to a third party. Since the sale price of the stock is not in dispute, such basis will be determinative of the amount of said gain or loss. The record herein, so far as it bears upon the fair market value of the Water Company stock at the time Barbush acquired it, is far from satisfactory. Barbush introduced no opinion testimony as to the value of the Water Company stock on any date; and he also did not place in evidence, either the books and records of the Water Company, or a balance sheet of said company for a date proximate to that on which the stock was transferred; or even a description of all assets held by the Water Company at that time. The respondent, in view of this circumstance, has presented an alternative contention on brief, that Barbush completely failed to establish any basis for the Water Company *355 stock; and that, in accordance with his notice of deficiency, we should conclude that Barbush's basis for the stock was zero. It is our conclusion from an examination and weighing of all the evidence, that, while the record is incomplete and unsatisfactory as to this basis question, the stock did have some value on the date of its distribution; and that a true reflection of income requires that we make a determination of such value, on the basis of the evidence before us. There is evidence which bears upon the nature and value of the total assets of the Townsite Company, including the stock of its subsidiary Water Company, during the period from 1948 to 1950. There also is evidence which bears upon the nature and condition of the lands, pipe lines, pumps and equipment of the Water Company, as well as the amount of that company's operating profits and losses. From our consideration of all the evidence of record and our weighing of the same as best we can, we have hereinabove found as a fact, and we here hold, that the fair market value of the stock of the Water Company at the time it was distributed to Barbush in 1950 was $60,000. And we further hold that Barbush's basis for computing *356 gain or loss on his subsequent sale of said stock to the Smith Township Municipal Authority in January 1953, was this same amount of $60,000. The result of such holdings is, and we here hold, that Barbush realized long-term capital gain upon his sale of the stock in January 1953, in the amount of $53,070 - representing the difference between his basis of $60,000 and the undisputed sale price of $113,070. Decisions will be entered under Rule 50. Footnotes
1. In about 1950, the amount of the depreciation theretofore taken on the houses only, was adjusted as the result of an examination made by the Internal Revenue Service, so as to reflect an undepreciated balance remaining, as of June 4, 1948, of $28,088.27. a1 The record contains no explanation for the above amortization of the real estate. a2 As hereinafter found, $128,377.12 of said account payable to the Water Company was entered on the books in April 1948, without explanation therefor; and a contra entry was entered on the Water Company's books. And then, on March 31, 1950, the entire balances in each of these accounts were written off.↩
*. See note to the foregoing balance sheet of the Townsite Company, regarding this account.↩
2. Said appraisal recited that the properties valued therein, consisted of: "[Approximately] 324 acres known as Langeloth Townsite, * * * [together with] a business building containing a market, a beauty shop, and a barber shop * * * [and] also a municipal building, and 251 dwelling houses."↩
3. Barbush testified that an insurance policy of later date, which was received in evidence and which described the coverage of the various buildings involved, was identical with the original policy issued in 1948.↩