## FIDELITY TRUST CO. v. UNITED STATES.
### No. 1831.

District Court, W. D. Pennsylvania.
March 24, 1943.

Thorp, Bostwick, Reed & Armstrong, and Lee W. Eckels, all of Pittsburgh, Pa., for plaintiff.

Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., and Andrew D. Sharpe and William B. Waldo, Sp. Assts. to the Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., for defendant.

GIBSON, District Judge.

The court, after hearing and consideration, makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact.

1. During the year 1935 the plaintiff, Fidelity Trust Company, was and ever since has been a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and having its principal office and place of business at Pittsburgh in the Western District of Pennsylvania.

2. During the year 1935, plaintiff was trustee of a certain trust estate (herein referred to as the E. T. Weir Trust) created by an agreement of trust dated December 29, 1934, between plaintiff and E. T. Weir.

3. The taxes here involved are income taxes for the year 1935, assessed against the E. T. Weir Trust. The taxes in the amount of $6,582.07, with interest thereon of $1,828.46, were paid by plaintiff, as trustee of the E. T. Weir Trust, to William Driscoll, Collector of Internal Revenue for the 23d Collection District of Pennsylvania, on November 15, 1940. Said Collector at the time this action was brought was no longer in office.

4. During the year 1935, plaintiff was also trustee of a certain trust estate (hereinafter referred to as the D. M. Weir Trust) created by an indenture of trust dated November 1, 1926 between the Bank of Pittsburgh, National Association, and D. M. Weir.

5. During the year 1935, the E. T. Weir Trust and the D. M. Weir Trust each owned a substantial number of shares of the capital stock of National Steel Corporation.

6. Early in 1935 plaintiff, as trustee of the said trusts, suggested to E. T. Weir, donor of the E. T. Weir Trust, and to his son, H. Kline Weir, who was one of the beneficiaries of the E. T. Weir Trust, that the securities held by these trusts should be diversified.

7. Thereafter in 1935, E. T. Weir and H. Kline Weir and complainant discussed the advisability of selling 10,000 shares of National Steel Corporation stock held by the said trusts, 5,000 shares thereof to be sold out of each trust.

8. At the time of said discussion, both E. T. Weir and H. Kline Weir held the opinion that a sale of such stock should be made in 1935, but had formed no opinion as to any specific time in 1935 for selling such stock.

9. In the course of the discussion mentioned in paragraph 8 above, an equal division of the proceeds of the proposed sale between the two trusts was discussed and both E. T. Weir and H. Kline Weir held the opinion that such a policy should be adopted to prevent the effect of fluctuations in the market price of this stock, which might otherwise result in a benefit to one trust at the expense of the other trust as sales of the stock were made from time to time.

10. After such discussion, H. Kline Weir talked with each of the other beneficiaries of the E. T. Weir Trust and with each of the beneficiaries of the D. M. Weir Trust and explained to them the recommendations of E. T. Weir and himself as to the sale of 10,000 shares of said stock and the equalization of the proceeds.

11. In the course of and as a result of the conversations between H. Kline Weir and the beneficiaries mentioned above, an oral agreement was made by the beneficiaries of each of the trusts that 10,000 shares of National Steel Corporation stock should be sold by plaintiff, 5,000 shares thereof to be sold out of each trust, and the proceeds to be divided equally between the two trusts. Plaintiff, as trustee of both trusts, agreed to such equalization agreement.

12. Thereafter, plaintiff was informed by H. Kline Weir, through plaintiff's vice

president and trust officer, Alexander P. Reed, of the oral agreement made by the beneficiaries of the two trusts with respect to the sale of 10,000 shares of National Steel Corporation out of the two trusts.

13. Thereafter, early in July, 1935, E. T. Weir and H. Kline Weir again discussed with complainant the proposed sale of National Steel Corporation stock held by the two trusts and it was concluded that 5,000 shares should be sold immediately.

14. H. Kline Weir, representing the beneficiaries of both trusts, through said Alexander P. Reed, requested that the oral agreement between the beneficiaries of the two trusts with respect to such sale be carried out by Complainant.

15. On July 6, 1935, a sale on the open market of 5,000 shares of National Steel Corporation was effected through a New York brokerage firm, Wagner, Scott & Company.

16. The net proceeds of the sale of said 5,000 shares were $234,732.74.

17. Shortly thereafter, plaintiff received the broker's statement as to the sale of the 5,000 shares and ascertained that it was necessary to make delivery of the certificates for such shares as promptly as possible.

18. Accordingly, plaintiff delivered certificates for 5,000 shares of said stock out of the certificates registered in the name of the D. M. Weir Trust.

19. Delivery of certificates registered in the name of the D. M. Weir Trust was made for the reason that such delivery could be effected more promptly and easily than if certificates for half of the shares so sold were delivered out of the certificates held in each trust, inasmuch as the plaintiff not long before had perfected its authority to transfer securities held in the D. M. Weir Trust with the transfer agent thereof in New York, but had not yet done so with respect to securities held by the E. T. Weir Trust.

20. Thereafter, on August 14, 1935, the remaining 5,000 shares of National Steel Corporation stock were sold on the open market, the net proceeds thereof being $327,237.50.

21. Delivery of the 5,000 shares sold on August 14, 1935 was made with certificates therefor registered in the name of the E. T. Weir Trust.

22. E. T. Weir, as required by the terms of the trust indenture creating the D. M. Weir Trust, consented in writing to the sale and delivery of 5,000 shares of National Steel stock out of the D. M. Weir Trust.

23. On August 20, 1935, a written agreement entitled "Assignment and Transfer of Funds" authorizing and directing the transfer described in paragraph 24 hereof was executed by the beneficiaries of each of the trusts.

24. In order to carry out the agreement between the trustee and beneficiaries of the two trusts and to divide the proceeds of the two sales equally between the two trusts, $46,252.38 of the proceeds of the August 14, 1935 sale were transferred from the E. T. Weir Trust to the D. M. Weir Trust.

25. Said written agreement was executed at the request of plaintiff.

26. The 5,000 shares delivered by plaintiff pursuant to the sale on August 14, 1935 had a basis for the determination of gain or loss in the hands of plaintiff of $55,572 and, for the purpose of Section 117 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev. Acts, page 707, were capital assets which had been held for more than ten years.

27. Plaintiff filed the required income tax returns for the year 1935 for the E. T. Weir Trust on March 15, 1936, and the tax shown to be due, $15,829.54, was paid on said date.

28. Thereafter, plaintiff paid an additional tax of $2,845.10 on the income of said trust resulting from an adjustment to the basis of the 5000 shares of National Steel Corporation stock by the Commissioner of Internal Revenue.

29. The taxes referred to in paragraphs 27 and 28 above are not in dispute.

30. On June 14, 1940, the Commissioner of Internal Revenue issued a notice of deficiency in the 1935 income taxes of the E. T. Weir Trust, the amount of said deficiency being $6,582.07. Plaintiff had theretofore consented to an extension of the period of limitation of assessment beyond June 14, 1940.

31. No petition for redetermination of said deficiency was filed with the Board of Tax Appeals.

32. The net proceeds realized by the E. T. Weir Trust from the sale of 5,000 shares of the capital stock of National Steel Corporation was $280,985.12.

33. On December 27, 1940, plaintiff, within the time and in the manner pre-

scribed by law, filed with the then Collector of Internal Revenue for the 23d Collection District of Pennsylvania a claim for refund of the additional taxes paid for the year 1935 in the amount of $6,582.07. This claim for refund was formally rejected by the Commissioner of Internal Revenue and notice of such rejection was given to the plaintiff on June 10, 1941.

34. On May 27, 1941, plaintiff filed with the aforesaid Collector of Internal Revenue an amended claim for refund of the additional taxes of $6,582.07 paid for the year 1935 as stated above and for the interest paid thereon of $1,828.46. The Commissioner of Internal Revenue formally rejected the amended claim for refund and notice of such rejection was given to the plaintiff on September 17, 1941.

35. This action was filed February 11, 1942, within the time allowed by the internal revenue laws.

### Conclusions of Law.

I. This Court has jurisdiction of this action for the reason that it is a suit to recover taxes and interest thereon assessed and paid under the Internal Revenue Laws of the United States of America to a Collector of Internal Revenue who, at the time of the commencement of this action, was no longer in such office.

II. Plaintiff is entitled to recover the taxes and interest paid by it with respect to the excess of the proceeds of the sale of 5,000 shares of the capital stock of National Steel Corporation in 1935, as determined by the Commissioner of Internal Revenue over the proceeds of such sale, $280,985.12, actually received.

III. Plaintiff is entitled to judgment in its favor calculated in accordance with this opinion.

IV. The transfer on August 14, 1935 of $46,252.38 by plaintiff as trustee of the E. T. Weir Trust to the D. M. Weir Trust was not a gift from said E. T. Weir Trust to said D. M. Weir Trust, but was made pursuant to a valid and binding agreement theretofore made between plaintiff, as trustee of both Trusts, and the beneficiaries of both trusts and persons whose assent was required to transfer of holdings of the trusts, whereby the proceeds of 5,000 shares of National Steel Corporation stock, by said agreement to be sold by each trust, were to be equally divided between the trusts if variation in amount received occurred by reason of sales at different times.

V. The entry of judgment for plaintiff will be deferred pending the filing of a stipulation by the parties as to the amount thereof.

### Discussion.

By the present action the complainant seeks to recover an alleged overpayment of income taxes for the year 1935. Claim for refund was filed in due time and has been rejected by the Commissioner of Internal Revenue.

During 1935 the Fidelity Trust Company was trustee of two separate trust estates. One was created in 1926 by D. M. Weir and the other by Ernest T. Weir in 1934. The corpus of each trust consisted largely of National Steel Corporation stock. By the terms of the D. M. Weir Trust all purchases and sales of securities by the trust were required to be approved by E. T. Weir, and he being interested in the trust created by himself, it was the custom of the complainant to consult with him and his son, H. Kline Weir, as to transactions in the securities of both trusts. H. Kline Weir was a beneficiary under the E. T. Weir Trust, and, being the only beneficiary of either trust residing in Pittsburgh, was accustomed to represent the beneficiaries of both trusts in dealing with the trustee in matters affecting their interests.

In 1935 the trustee, E. T. Weir and H. Kline Weir were of opinion that greater diversification of the securities held by each trust was desirable, and, after obtaining the consent of all the beneficiaries, agreed that 5,000 shares of National Steel Corporation stock should be sold by each trust. This agreement did not contemplate such sale at one time, and consequently the possibility of fluctuation in price was considered. Therefore it was agreed by all parties interested that an equal division of the proceeds of the sale should be made between the two trusts and thus neither benefit nor loss would attach to either trust by reason of possibility of variation in the price of the securities sold. H. Kline Weir, representing all beneficiaries, may have contemplated sales of equal amounts of the stock of each trust at each sale, in which event no variation in price could have existed in respect to the price of the stock of each trust. The sales were not so made.

After the diversification and equalization agreements had been verbally entered into by the trustee with E. T. Weir and H. Kline Weir, H. Kline Weir notified the trustee that he had ordered a broker to sell

5,000 shares of National Steel Corporation stock, and indicated need for haste in the matter. The trustee undertook to furnish the stock in the time required, but for its own convenience forwarded to the transfer agent of the Steel Corporation 5,000 shares of stock held by the D. M. Weir Trust. This was in the interest of time, as that trust had made a sale of such stock shortly before the instant sale and had then furnished proof to the transfer agent of the authority of the trustee to dispose of the stock. No such authority had been established as to the stock of the E. T. Weir Trust, and to prevent delay the D. M. Weir Trust stock was used.

This sale was on July 6, 1935, and was for $234,732.74. On August 14, 1935, 5,000 shares of the stock of the E. T. Weir Trust was sold for $327,237.50, and $46,-252.38 was transferred from that trust to the D. M. Weir Trust pursuant to the equalization agreement. On August 20, 1935, all the beneficiaries of both trusts signed a paper authorizing the trustee to transfer $46,252.38 from the E. T. Weir Trust to the D. M. Weir Trust.

After tax return by the trustee of the E. T. Weir Trust, and several adjustments thereof with which we are not concerned, the Commissioner of Internal Revenue held that the E. T. Weir Trust had derived proceeds of $327,237.50 from the sale of its 5,000 shares of stock and a gain of $271,665.50. That is, he held that the transfer of $46,252.38 to the D. M. Weir Trust in recognition of the equalization agreement was ineffective, from an Internal Revenue standpoint, to reduce the gain as it appeared upon the face of the sale. The judgment in the instant action depends upon correctness or the reverse of the Commissioner's ruling.

Counsel for the defendant contends that the instant case is controlled by Davidson v. Commissioner, 305 U.S. 44, 59 S.Ct. 43, 83 L.Ed. 31. As we view that decision it is not based upon the same principle as the instant matter. In that case the taxpayer directed his broker to sell, and his bank to deliver to the broker, certain shares which he had recently purchased. By mistake the bank delivered certain shares which had been purchased at an earlier date and for less in amount than those the taxpayer wanted to sell, and his profit was greater than it would have been had the recently purchased shares been sold. Return was made upon the supposition that the stock had been sold as directed. Having made a greater gain from the stock actually sold than had been returned by him, the taxpayer was required to pay the tax upon that greater gain.

Davidson v. Commissioner, supra, is not the instant case. In this case we have, in effect, an agreement between the trustees of two distinct trusts. Having each stock of the same company, and each interested in disposing of a portion of it and diversifying his holdings, they entered into the equalization agreement for sale as a common venture. Should one of them, finding that he would profit thereby, have fraudulently disclaimed the agreement, the other would have had legal redress; and surely, in case one trustee were compelled to pay a judgment to the other in the taxable year, none could be found who would contend that the amount so recovered constituted a taxable gain of the delinquent trustee. What logical reason exists for a different conclusion where a valid agreement, entered into by the beneficiaries of each trust and recognized by the trustee, has been voluntarily carried out? None, any more than equitable reason exists for taxing the D. M. Weir Trust with a gain of $46,252.38, and then taxing the E. T. Weir Trust with the same $46,252.38 as a gain of that trust in the same year, as was done.

■ No charge of a breach of trust can be asserted against the trustee in this action. An agreement for a joint transaction, first verbal and later confirmed in writing, was entered into by all the beneficiaries of both trusts. Such an agreement, followed by the trustee of both trusts, is approved by Internal Revenue Law. Isaac W. Frank Trust of 1927, 44 B.T.A. 934; Revenue Act 1934, § 801(a) (3), 26 U.S.C.A. Int.Rev. Code, § 3797(a) (2). In holding that the execution of the agreement by the trustee was invalid the Commissioner of Internal Revenue was acting beyond his powers.

Judgment in favor of the complainant will be entered.